## AMETEK, INC.

v.

## PIONEER SALT & CHEMICAL CO., George S. Coyne Chemical Co., Inc., Textile Chemical Co., Inc. and Chemclene Corp.

Civ. A. No. 88–1059.

United States District Court,
E.D. Pennsylvania.

Dec. 15, 1988.

Mary Q. Smith, David Richman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

Perry S. Bechtle, Philadelphia, Pa., for Chemclene Corp.

Karl L. Stefan, Masterson, Braunfeld, Himsworth & Maguire, Richard K. Masterson, Norristown, Pa., for Textile Chemical Co., Inc.

Robert R. Reeder, Cozen & O'Connor, Philadelphia, Pa., for George S. Coyne Chemical Co. Inc.

## MEMORANDUM AND ORDER

KATZ, District Judge.

AND NOW, this 15th day of December, 1988, after a hearing, it is hereby ORDERED that the Motions for Summary Judgment of defendants George S. Coyne Chemical Co., Inc., Textile Chemical Co., Inc. and Chemclene Corp. are DENIED. The defendants have failed to show that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

1. In this suit, plaintiff Ametek, Inc. ("Ametek") seeks to recover from defendants some or all of its response costs incurred to date in its investigation and amelioration of trichloroethylene ("TCE") contamination at its Hunter Spring Division facility in Hatfield, Pennsylvania. Recovery is sought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. §§ 9601 *et seq.* In addition, plaintiff seeks a declaratory judgment that defendants are jointly and severally liable for any future remedial costs incurred by plaintiff.

2. Between 1980 and 1982, defendant Pioneer Salt & Chemical Co. ("Pioneer") delivered bulk shipments of TCE to Ametek. Between 1983 and 1985, defendant Textile Chemical Co., Inc. ("Textile") delivered bulk shipments of TCE to Ametek. In 1986, defendant Chemclene Corp. ("Chemclene") delivered bulk shipments of TCE to Ametek. In July, 1982, following Pioneer's final TCE delivery to Ametek, defendant George S. Coyne Chemical Co., Inc. ("Coyne") purchased certain of Pioneer's assets employed in the business of selling bulk chemicals. In 1984, an involuntary petition for bankruptcy was filed against Pioneer. On December 13, 1988, the automatic stay imposed by the bankruptcy court was lifted by order of Judge Twardowski, permitting this action to proceed

against Pioneer to the extent that there is insurance coverage available.

3. Plaintiff asserts liability against all defendants under CERCLA § 107(a), codified at 42 U.S.C. § 9607(a). Specifically as to Coyne, plaintiff claims that even though Coyne itself never made TCE deliveries to Ametek, it is nevertheless also liable under the above provision on the theory that it is Pioneer's successor-in-interest.

4. 42 U.S.C. § 9607 provides, in pertinent part:

**(a) Covered persons; . . .**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(B) any . . . necessary costs of response incurred by any . . . person consistent with the national contingency plan.

**(b) Defenses**

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(3) an act or omission of a third party other than an employee or agent of the defendant, . . . if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, . . . and (b) he took precautions against foreseeable acts or omissions of any such third party and the conse-

quences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607(a), (b).

5. 42 U.S.C. § 9607(a)(2)(B) expressly creates a private right of action for damages. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). In addition, a private party who has already expended response costs may seek a declaratory judgment that the defendant is liable for future clean-up expenses as well. *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 291–92 (N.D.Cal. 1984); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1430 (S.D.Ohio 1984).

6. A strict liability standard applies in suits seeking damages under § 9607(a). *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1042 (2d Cir.1985); *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1140 n. 4 (E.D.Pa.1982).

7. Plaintiff contends that Textile and Chemclene are liable under § 9607(a)(2) and (4) as persons "who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . . from which there is a release. . . ." 42 U.S.C. § 9607(a)(2), (4). For liability to be established under the statute it must be shown that (1) a "release" of a hazardous substance occasioning response costs occurred (2) at the time of "disposal" of a hazardous substance (3) from a "facility" (4) "operated" by the defendant(s).

8. Summary judgment is warranted only upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

9. It is admitted by the parties that TCE is a hazardous substance for CERCLA purposes. *See* 42 U.S.C. § 9601(14).

10. It is admitted by the parties that Ametek has incurred response costs consistent with the national contingency plan.

11. "Facility" is defined as "(A) any . . . structure, installation, equipment, pipe or pipeline, . . . storage container, motor vehicle, rolling stock, . . . or (B) any site or

area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located...." 42 U.S.C. § 9601(9).

■ 12. While "operate" or "operator" are not defined in the statute, courts have focused on the degree of control exercised over a facility in construing these terms. *E.g., United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 743 (8th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1988). There appears to be direct and circumstantial evidence suggesting that defendants possessed the requisite control to qualify as "operators" under the statute. Plaintiff maintains that Pioneer, Textile and Chemclene not only delivered TCE to Hunter Spring, but that they also transferred the TCE from tank trunks to the TCE storage tank, and that in carrying out the delivery operation exercised control over the handling of the TCE and over activities at the place where TCE came to be stored. On this point there exists a genuine issue of material fact.

13. "Release" is defined by the statute as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." 42 U.S.C. § 9601(22).

14. Whether or not releases of TCE occurred constitutes a genuine issue of material fact. There is evidence based on soil and groundwater sampling that there were very high concentrations of TCE at varying depths beneath and around the TCE storage tank and pad as well as in the grassy area west of the tank pad. Plaintiff is prepared to offer expert opinion testimony to the effect that the soil contamination found beneath the storage tank came from a discharge or several discharges of TCE onto the ground around the tank. There is further circumstantial evidence that the TCE contamination in the grassy area occurred during the period when defendant Chemclene was the sole supplier of TCE to the Hunter Spring site.

15. The term "disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... haz-

ardous waste into or on any land or water so that such ... hazardous waste ... may enter the environment...." 42 U.S.C. § 9601(29); 42 U.S.C. § 6903(3).

16. Whether disposals of TCE occurred during defendants' tank filling operations poses a genuine issue of material fact. There is circumstantial evidence suggesting that defendants "disposed of," *i.e.,* discharged, TCE during their TCE tank filling operations. When Ametek purchased the Hunter Spring site in the 1960s, it was farmland. Ametek had only one storage tank for TCE, which was purchased and installed in 1975. Between 1980 and 1986 Pioneer and defendants Textile and Chemclene supplied bulk TCE to Ametek. TCE was removed from the storage tank for utilization by Ametek in its manufacturing processes through a closed system. There were no leakages in the tank and adjacent pipe. As noted at ¶ 14, *supra,* there is in addition circumstantial evidence that the TCE contamination in the grassy area occurred during the period when defendant Chemclene was the sole supplier of TCE to the Hunter Spring site.

17. Plaintiff contends that defendant Coyne is liable under 42 U.S.C. § 9607(a) as Pioneer's successor-in-interest. In the face of statutory silence on the issue, the traditional common law test for successor liability has been held to apply in suits brought under CERCLA. *See, e.g., United States v. Vertac Chemical Corp.*, 671 F.Supp. 595, 614 (E.D.Ark.1987).

■ 18. The purchaser of a company's assets does not assume the liabilities of the seller unless: (1) there is an express or implied agreement on the purchaser's part to assume the seller's obligations; (2) the transaction amounts to a *de facto* merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir.1985). Plaintiff contends that Coyne is liable because the asset sale amounted to a *de facto* merger of Pioneer and Coyne.

■ 19. In determining whether a transaction constitutes a *de facto* merger,

courts look to the following factors: (a) there is a continuation of the enterprise of the seller, so that there is continuity of management, personnel, physical location, assets, and general business operations; (b) there is a continuity of shareholders which results from the purchaser paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller so that they become a constituent part of the purchasing corporation; (c) the seller ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (d) the purchaser assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 310 (3d Cir.1985).

20. There is circumstantial evidence suggesting that there was a continuation of Pioneer's enterprise following the sale and that Pioneer had a contingent stake (like an equitable interest in profits less certain obligations) in its former business. Under the circumstances, I will defer this issue to trial.