Amy BRENNAN, Plaintiff,

v.

NATIONAL TELEPHONE DIRECTORY CORPORATION, Penn–Del Directory Corporation, Bell Atlantic Enterprises International, Inc. d/b/a Bell of Pa Yellow Pages, Defendants.

No. 93–CV–5899.

United States District Court, E.D. Pennsylvania.

April 28, 1994.

John J. Delany, III, David P. Bateman, Callahan, Delany & O'Brien, Philadelphia, PA, for plaintiff.

Francis M. Milone, Stacy K. Weinberg, Morgan, Lewis & Bockius, Philadelphia, PA, Gerald M. Yuknis, Penn–Del Directory Corp., Somerset, NJ, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This matter involves a motion by defendants to dismiss or, in the alternative, for summary judgment to dismiss all counts of plaintiff's complaint. The pertinent facts are as follows. Plaintiff, a New Jersey resident, is a former employee of Penn–Del Directory Corporation ("PDD"), which is located in Bensalem, Pennsylvania. According to the parties, there is some confusion over who was actually plaintiff's employer.[1] In her complaint, plaintiff alleges that either PDD or National Telephone Directory Corporation ("NTD") hired her, however, defendants assert that NTD was not plaintiff's employer. NTD is a New Jersey corporation and maintains its principal offices in Somerset, New Jersey. NTD and PDD apparently were both wholly-owned subsidiaries of Bell of Canada Enterprises ("BCE"), which sold PDD and NTD to Bell Atlantic on January 23, 1993. In any event, plaintiff was hired as a sales training coach on April 7, 1986 and

---

1. For purposes of this opinion, we will refer to plaintiff's employer as PDD although we make no such finding at this point.

she worked in the Bensalem office. She eventually was promoted to district sales manager, and finally, in 1988, took a position as an account executive with PDD. As part of plaintiff's scope of employment, she apparently travelled in both Pennsylvania and New Jersey.

In July, 1992, while plaintiff was out on maternity leave, she received a notice from defendants that she was being potentially charged with six sales errors. Apparently, according to company policy, every employee charged with four chargeable errors in a single calendar year was subject to termination. Plaintiff discussed these errors with defendants' representatives during a telephone call. She alleges that these representatives admitted that several of the alleged errors, some of which dated back to 1989, came into being because plaintiff took maternity leave, and that the errors were actually not her fault. Despite this, plaintiff was charged with the errors, and was terminated from her employment on July 9, 1992.

Plaintiff filed an eleven-count complaint with this Court on November 8, 1993. Thereafter, defendants filed the present motion on December 9, 1993. Plaintiff's response was filed on December 22, 1993. Both parties have also filed reply briefs. Accordingly, defendants' motion is now ripe for consideration.

### Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is the appropriate method in which to challenge the legal sufficiency of a claim. *See United States v. Marisol, Inc.*, 725 F.Supp. 833 (M.D.Pa.1989). In ruling upon a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so reviewing the pleadings and any materials of record, the court must accept as true all of the matters pleaded and all reasonable inferences that can be drawn therefrom, construing them in the light most favorable to the non-moving party. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990); *Hough/ Loew Assoc., Inc. v. CLX Realty Co.*, 760 F.Supp. 1141, 1142 (E.D.Pa.1991). A complaint is properly dismissed if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Ramson v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988).

Under the Federal Rules of Civil Procedure, where a party attaches materials outside the pleadings to a motion to dismiss, the motion may be converted into a motion for summary judgment. Fed.R.Civ.P. 12(c). Whether or not to treat the motion as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court. *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1275 (D.N.J.1990); *Kelley ex. rel. Michigan NRC v. Arco Indus.*, 721 F.Supp. 873, 877 (W.D.Mich.1989). However, courts have held that exercise of the court's discretion is not warranted where there has been little or no discovery conducted by the parties. *Brug v. The Enstar Group, Inc.*, 755 F.Supp. 1247, 1251 (D.Del.1991); *Ospina v. Dept. of Corrections*, 749 F.Supp. 572, 574 (D.Del.1990); *Kelley*, 721 F.Supp. at 877–78. Considering the motion as a motion for summary judgment would be improper in those situations because the parties may not be able to present enough material to support or oppose a motion for summary judgment since no factual record has yet been developed. *Ospina*, 745 F.Supp. at 574 (citing *Melo v. Hafer*, 912 F.2d 628, 634 (3rd Cir.1990), *aff'd*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

In the present case, defendants filed this motion approximately one month after the complaint was filed. The parties had not yet conducted any discovery when the motion was filed. Although plaintiff has filed some exhibits along with her motion in opposition to defendants' motion, we feel it would be premature to consider this motion as a motion for summary judgment given the factual nature of some of the issues raised in defendants' motion. As such, we decline to consid-

er the materials attached by both parties, and will consider this motion only as a motion to dismiss.

## Discussion

### A. Count I—Title VII

■ Plaintiff's first count alleges that defendants discriminated against her in violation of 42 U.S.C. § 2000e–2 and 42 U.S.C. § 2000e(a) on the basis of her sex and/or pregnancy. Defendants now claim that they are entitled to summary judgment on count one because plaintiff cannot establish a prima facie case of discrimination.

■ In order to demonstrate a prima facie case of discrimination, the employee must show that she 1) belonged to a protected class, 2) that she was qualified for the job from which she was discharged, and 3) that others not in the protected class were treated more favorably than plaintiff. *Weldon v. Kraft*, 896 F.2d 793, 797 (3rd Cir.1990) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 250–52, 101 S.Ct. 1089, 1092–93, 67 L.Ed.2d 207 (1981)). However, courts have recognized that this test is not the only way to demonstrate a prima facie case. *Lewis v. University of Pittsburgh*, 725 F.2d 910, 914 n. 4 (3rd Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984).

In the present case, defendants argue they are entitled to summary judgment because it is undisputed that plaintiff cannot prove any set of facts showing that others not in the protected class were treated more favorably. However, as noted above, this factual determination is premature since we are only considering this motion as a motion to dismiss. In reviewing the complaint, we note that plaintiff has alleged that "no male account executive with the defendants had ever undergone the scrutiny of sales and account records dating back over a span of years while on disability-related leave that the Plaintiff underwent in July of 1992." Complaint, para. 33. She further alleges that no man in the Bensalem office had ever been discharged for errors except for one person who was a member of a protected class (ADEA). *Id.* at para. 34. She also alleges that the scrutiny which she underwent was unprecedented, in addition to being pretextual. *Id.* Thus, while defendants argue they are entitled to summary judgment because plaintiff cannot prove a prima facie case of discrimination, we find that by looking at the complaint in a light most favorable to plaintiff, plaintiff has alleged facts which, if true, would show that others not in the protected class were treated more favorably than plaintiff. While we state no opinion as to whether plaintiff will be able to prove this claim, at this point in time, plaintiff's claim survives a motion to dismiss.

### B. Count II—Title VII

Defendants next claim that count II must be dismissed because it is untimely. Count II is another Title VII claim for pregnancy discrimination and asserts that defendants refused to accommodate plaintiff's request that she not work overtime during her pregnancy on behalf of her doctor's advice. Plaintiff alleges that she was advised that it was not company policy to make accommodations on account of pregnancy, and that she had to comply with all of her job requirements or else take immediate disability. *Complaint*, para. 49. She further alleges that she was required to return to her doctor and obtain a note stating she was able to perform all of her job functions. *Id.* at para. 51. Plaintiff alleges that these acts occurred sometime in December 1991.

■ Defendants now argue that plaintiff's Title VII claim is untimely. They essentially argue that plaintiff failed to properly file her discrimination claim with the Equal Employment Opportunity Commission ("EEOC") because she did not first file a claim with the Pennsylvania Human Relations Commission ("PHRC"). Defendants claim that in order for plaintiff's claim to be timely, her claim with EEOC could not be filed until sixty days after the claim was filed with PHRC by virtue of 42 U.S.C. § 2000e–5(c), which provides that "no charge may be filed . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e–5(c).

Had plaintiff followed this procedure, defendants argue her claim would still be untimely because she would then have failed to file her claim with EEOC within 300 days of the alleged discriminatory event as required by the statute. *See* 42 U.S.C. § 2000e–5(e).

■ Before a federal court has jurisdiction over a Title VII claim, a claim of discrimination must be properly filed with EEOC. *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 878 (3rd Cir.1990). Under the statute, a complaint must be filed with EEOC within 180 days of the alleged discrimination. 42 U.S.C. § 2000e–5(e); *Shaffer v. National Can Corp.,* 565 F.Supp. 909, 910 (E.D.Pa.1983). However, the time for filing is extended to 300 days if the discrimination occurs in a "deferral state." *Shaffer,* 565 F.Supp. at 910. A deferral state, like Pennsylvania, is one that has its own agency to adjudicate employment discrimination claims and grant remedies. *Id.* The agency with this sort of power in Pennsylvania is the PHRC, which acts as the state equivalent of the EEOC. *Id.* at 910–11. According to section 706(e) of Title VII, where "the person aggrieved has initially instituted proceedings with a State or local agency," plaintiff then has 300 days in which to file her claim with EEOC. 42 U.S.C. § 2000e–5(e); *Shaffer,* 565 F.Supp. at 910.

■ As defendants point out, section 706(c) of Title VII provides that in a deferral state, a charge with EEOC may not be filed until sixty days after the institution of the claim with the state agency, or until the state agency has terminated its proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(c); *Shaffer,* 565 F.Supp. at 911. This language has been construed to mean that the filing of a claim with EEOC is precluded until after the expiration of the sixty day period. *Shaffer,* 565 F.Supp. at 911. Further, by virtue of the Supreme Court's decision in *Mohasco v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), in deferral states, a claim with a state agency must be filed within 240 days of the discriminatory event, so that after the expiration of sixty days, the EEOC claim can still be filed within the 300 day

time limitation. *Shaffer,* 565 F.Supp. at 911 (citing *Mohasco,* 447 U.S. at 814–15, 199 S.Ct. at 2491–92). This rule, derived from *Mohasco,* is referred to as the "240 day rule." *Shaffer,* 565 F.Supp. at 911. The exception to this rule is when the plaintiff files with the state agency after 240 days, but the state agency terminates its proceedings before 300 days. *Mohasco,* 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16 (1980). In such a situation, the EEOC charge is still timely filed if filed before 300 days.

Although *Mohasco's* 240 day rule is still viable, the Supreme Court has recognized problems that arise when a party files a complaint with EEOC after 240 days but before 300 days. In *E.E.O.C. v. Commercial Office Prod. Co.,* 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the Supreme Court held that where a party initially files a complaint with EEOC after the 240 day period, if the state agency terminates its proceedings pursuant to a worksharing agreement between it and EEOC, such agreement providing that the agency agrees to waive the deferral period, then EEOC can immediately proceed with its action. The Court held that "a state agency 'terminates' its proceedings when it declares that it will not proceed, if it does so at all, for a specified interval of time." *Commercial Office,* 486 U.S. 107, 116, 108 S.Ct. 1666, 1671 (1988).

In *Commercial Office,* the complaint was timely filed with EEOC on the 290th day after the alleged discriminatory event, and EEOC then sent a charge transmittal form to the state agency on the 294th day.[2] The Court reasoned that pursuant to the worksharing agreement, which stated that the state agency agreed to waive the deferral period but retained jurisdiction to act on the charge after completion of EEOC's processing, EEOC could immediately process the charge without waiting for the requisite 60 day time period to pass.

■ The Third Circuit has had occasion to consider *Commercial Office.* It has held that an initial filing with EEOC is sufficient to allow EEOC to immediately begin processing the charge without waiting sixty

**2.** The state agency in this case was the Colorado Civil Rights Division.

days, where "EEOC identified the charge as a state waiver case in a communication to the PHRC and the PHRC tacitly acceded to that characterization." *Trevino,* 919 F.2d at 880. This holding is pursuant to the worksharing agreement between EEOC and PHRC which allows PHRC to waive exclusive jurisdiction over claims initially filed with EEOC, and therefore a termination is effected. *Id.*

In the present case, plaintiff alleges that the discriminatory conduct occurred in December 1991, however, the exact date of discrimination is missing from the complaint. Plaintiff apparently filed a charge with EEOC on October 6, 1992. Defendants note that plaintiff's complaint with PHRC was not filed until January 7, 1993, and therefore plaintiff's claim was not timely because she failed to file with PHRC sixty days before filing with EEOC. However, as *Commercial Office* and *Trevino* make clear, such a procedure is unnecessary due to the worksharing agreement between PHRC and EEOC. Thus, assuming plaintiff's charge with EEOC was properly filed within 300 days, which we must assume for purposes of this motion, EEOC could immediately begin processing the charge and need not wait sixty days. However, plaintiff refers to a letter and certification of counsel in her response to the motion and addresses "the significance of inadvertent oversights made by the EEOC pertaining to sending the Complaint to the PHRC." Plaintiff's response, p. 7. As we previously noted, we are not treating this as a motion for summary judgment, and therefore decline to consider any exhibits filed by the parties. We note that at this point, given that we are to construe all reasonable inferences in the light most favorable to plaintiff, we must assume EEOC properly sent the transmittal letter to PHRC within 300 days. As such, this case would fall within *Trevino* in that the worksharing agreement effected a termination when EEOC identified the charge as a state waiver case in a communication to PHRC. While at some later point at time it might be proven that plaintiff's charge with EEOC was not filed within 300 days, or that EEOC failed to issue a transmittal letter to PHRC within 300 days, for purposes of this motion we assume all

charges were timely filed. As such, defendants' argument fails.

### C. Count III—Sex Plus/Pregnancy Discrimination

█ Plaintiff has asserted a claim for sex plus pregnancy discrimination in count three of the complaint and alleges that defendants violated Title VII by pursuing a course of action with the intent to eliminate pregnant women and/or working mothers from positions as account executives in their work force. Complaint, para. 61. Defendants now argue that this claim must be dismissed because it is merely duplicative of counts one and two and therefore fails to assert a new cause of action. Plaintiff argues that count three is broader than count one in that it is based on defendants' discriminatory animus toward women in general in the workplace and their attitude toward working mothers and/or pregnant women.

Upon careful review of count three, we conclude that it must be dismissed because it fails to set forth a separate claim. Plaintiff claims her termination "was the direct result of the Defendants' intention to rid pregnant women and/or working mothers from positions as account executives in their work force." Complaint, para. 61. However, the remaining paragraphs in count three fail to allege any facts, and merely consist of what testimony plaintiff will produce at trial as evidence of defendants' discrimination. For instance, plaintiff states "former female account executive(s) will testify, *inter alia,* that they were required to sign waivers and/or acknowledgments that if they failed to timely return to expected performance levels after they returned from pregnancy leave, they could be fired." *Id.* at para. 62. Paragraph 63 states "formal [sic] female supervisor(s) will testify that the Defendants' scheduled sales meetings in the evening hours to interfere with the child care arrangements of one working mother . . ." Further, plaintiff alleges she will present statistical evidence of defendants' hiring and firing practices related to the representation of pregnant women and/or working mothers. *Id.* at para. 65.

The allegations contained in count three fail to set forth any facts that have not

already been stated in counts one and two. Further, since this is not a class action, it is clear that plaintiff cannot maintain a claim on behalf of all working mothers or pregnant women employed by defendants. The allegations in count three merely go towards plaintiff's *proof* of discriminatory intent by defendants when she was fired (count one) and their failure to accommodate her during her pregnancy (count two). Since, it does not state a separate cause of action under Title VII, we will dismiss count three and grant plaintiff leave to replead should she have additional facts that pertain to her and which purport to state a separate Title VII violation other than those asserted in counts one and two. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1324 (2nd ed. 1990) (Rule 10(b) of the Federal Rules of Civil Procedure requires separate counts for claims arising out of separate occurrences and transactions); *see also Windsor v. A Federal Executive Agency*, 614 F.Supp. 1255, 1257 (D.Tenn.1983) (courts usually delete evidentiary matters when they are pled by plaintiff in the complaint), *aff'd*, 767 F.2d 923 (6th Cir.1985).

### D. NTD as improper defendant

■ Defendants next argue that all claims against NTD should be dismissed because PDD was plaintiff's employer and not NTD. Plaintiff, on the other hand, asserts that upon commencement of her employment, she was made to sign a restrictive covenant with both PDD and NTD who were both named as "the company," and that various documents sent to her during her employment included both defendants on the letterhead, and as such, the two defendants appear to be interrelated. Defendants also admit the two are interrelated. Given that there has not been any discovery conducted in this case, we believe it is premature to dismiss all the claims against NTD even though defendants assert NTD was not plaintiff's employer. Should, however, defendants wish to raise this issue in the future after a proper factual determination can be made, they are free to do so.

### E. Claims against Bell Atlantic

■ Defendants next argue that all claims against Bell Atlantic should be dismissed because it is not subject to liability as plaintiff's employer since it was not a viable party to this action until January 22, 1993 when it purchased PDD and NTD from BCE, which was six months after plaintiff was terminated. Plaintiff, however, argues that Bell Atlantic may be held liable under the doctrine of successor liability, and further that any determination as to whether Bell Atlantic is an improper party at this point in time is premature. We agree with plaintiff.

■ In Pennsylvania, the purchaser of a company's assets is not liable for the acts of the seller unless: "1) there is an express or implied agreement on the purchaser's part to assume the seller's obligations; 2) the transaction amounts to a *de facto* merger of the seller and purchaser; 3) the purchasing corporation is merely a continuation of the selling corporation; or 4) the transaction is entered into fraudulently to escape liability." *Ametek, Inc. v. Pioneer Salt & Chem. Co.*, 709 F.Supp. 556, 559 (E.D.Pa.1988) (citing *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3rd Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985)); *see also Bogart v. Phase II Pasta Mach., Inc.*, 817 F.Supp. 547, 549 (E.D.Pa. 1993) (stating Pennsylvania Superior Court has carved out six exceptions to rule of nonliability of successor corporations). Plaintiff has alleged that Bell Atlantic is a successor corporation in her complaint. *See* Complaint, paras. 7, 8. Obviously, any determination of this issue will be factual, and therefore we cannot properly consider the issue at this point in time. *See Brown v. Delaware & Hudson Railway Co.*, Civ. A. No. 91–3203, 1992 WL 330320 (E.D.Pa. Nov. 3, 1992) (court denied defendant's motion for summary judgment on basis that defendant could be liable as a successor corporation even though it acquired former corporation's assets nearly five months after plaintiff was terminated). Moreover, even though defendants object that Bell Atlantic should be dismissed because it was not named as a defendant in plaintiff's EEOC complaint, plaintiff asserts that she moved to amend her

complaint to include Bell Atlantic once she was notified of the change in corporate status. As such, defendants' objections are without merit. *See id.* at 6 (court rejected defendant's argument in summary judgment motion that it was not named as a defendant in plaintiff's EEOC complaint before litigating in federal court under ADEA); *Kolosky v. Anchor Hocking Corp.,* 585 F.Supp. 746 (W.D.Pa.1983) (allowing permissive joinder of successor corporation even though it was not named as defendant in EEOC complaint).

### F. Allegations under Pennsylvania and New Jersey law

■ In counts five through eleven, plaintiff seeks recovery in each count under both Pennsylvania and New Jersey law. Defendants now move to dismiss the portion of plaintiff's complaint that seeks recovery under New Jersey law on the basis that Pennsylvania law is the proper state's substantive law to be applied to this case, and because plaintiff cannot proceed simultaneously under both state's laws.

While we agree that plaintiff cannot recover for the same claims under both Pennsylvania and New Jersey law, we know of no rule that forbids plaintiff from pleading a cause of action in violation of the laws of two different states where a choice of law issue exists. In so stating, we note first that making a choice of law determination at this point is premature, as there is an issue as to whom plaintiff was employed by. Moreover, plaintiff alleges in her complaint that "the Defendants required the Plaintiff to sign covenants as a condition of employment which provided that any disputes relating to her employment would be governed by the laws of the State of New Jersey." *See e.g.* Complaint, para. 76. Thus, we cannot properly determine that Pennsylvania law governs this dispute on the basis of plaintiff's complaint alone.

Second, case law exists for the proposition that one may bring a cause of action under both foreign and domestic law when one is uncertain which law properly applies. For instance, in *Tsangarakis v. Panama Steamship Co., Ltd.,* 197 F.Supp. 704 (E.D.Pa. 1961), plaintiff had alleged in her complaint under the first cause of action that she was seeking recovery in tort under the laws of Great Britain, and was also seeking recovery under the Death on the High Seas Act, 46 U.S.C.A. § 761–765. In rejecting defendants' argument that plaintiff must choose which of the two substantive laws she was seeking recovery under, the court stated "[w]hile [plaintiff], of course, may not effect a double recovery, we know of no rule which requires her to make an election at this time. To the contrary, she may plead alternative, even inconsistent, theories of recovery. Such is the modern rule both at law and in admiralty." *Id.* at 705. *See also Nye v. A/S D/S Svendborg,* 358 F.Supp. 142, 143 (S.D.N.Y. 1973) ("plaintiffs need not elect their choice of law in a pleading" where they had asserted liability under laws of United States, Denmark and of the Canary Islands).

Finally, Rule 8(e) of the Federal Rules of Civil Procedure allows a party to allege "two or more statements of a claim ... alternately or hypothetically, either in one count ... or in separate counts." Fed.R.Civ.P. 8(e). Thus, since there is no prejudice to defendants in allowing plaintiff to allege violations of both Pennsylvania and New Jersey law, and because there is no rule which forbids plaintiff from doing so, we reject defendants' arguments.

### G. Claims under Pennsylvania Human Relations Act

■ Defendants next argue that we must dismiss plaintiff's claims under the Pennsylvania Human Relations Act (PHRA) (counts five through seven) because she did not timely file a complaint within 180 days of the alleged discrimination. Rather, defendants argue that her complaint with the PHRC was filed on January 7, 1993, which is 182 days after plaintiff was discharged. As such, defendants argue that we lack jurisdiction over this claim. However, we reject defendants' arguments for two reasons.

Section 959(h) of the PHRA states "Any complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination, unless otherwise required by the Fair Housing Act." 43 P.S. § 959(h) (Supp.1993). Further, the statute states that "[t]he time limits for filing

under any complaint or other pleading under this act shall be subject to waiver, estoppel and equitable tolling." 43 P.S. § 962(e) (Supp.1993).

■ There are basically three reasons for allowing equitable tolling. First, it is allowed where the plaintiff actively pursues his judicial remedies but files a defective pleading during the statutory period, such as filing in the wrong forum. *Irwin v. Veterans Admin.*, 498 U.S. 89, 94–97, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753 (3rd Cir.1983), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983). Second, it is allowed where the deadline for filing has passed due to the plaintiff's reliance on his adversary's misconduct or misrepresentation. *Irwin*, 498 U.S. at 96–97, 111 S.Ct. at 458; *Kocian*, 707 F.2d at 753. Finally, it is allowed where the plaintiff has been prevented from asserting his rights in some "extraordinary way." *Kocian*, 707 F.2d at 753. Courts generally disfavor equitable tolling where the plaintiff missed the deadline because of a lack of due diligence. *Irwin*, 498 U.S. at 96–97, 111 S.Ct. at 458 (holding that where plaintiff filed Title VII complaint with district court late because his attorney was out of town when the E.E.O.C.'s right to sue letter was delivered to his office was not an adequate reason to justify equitable tolling).

In this case, plaintiff argues that she filed her complaint with EEOC on October 6, 1992, which was clearly within the 180 day deadline. She alleges in her complaint that her claim with PHRC was cross-filed at the same time that she filed her complaint with EEOC. Complaint, para. 59. Without reviewing any of the documents referred to in plaintiff's and defendants' briefs, it is apparent from their briefs that EEOC did not submit plaintiff's complaint to PHRC pursuant to the worksharing agreement, and that she ended up sending a complaint to PHRC directly on January 7, 1993. However, given that we are to construe the above allegations in the most favorable light to plaintiff for purposes of the motion to dismiss, defendants have failed to prove that plaintiff's

claim was filed untimely and must be dismissed.[3] *See Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 272, 419 A.2d 431, 452 (1980) (transmittal of complaint by EEOC to PHRC was sufficient and plaintiff did not actually have to file complaint with PHRC directly in order to comply with administrative remedies before suing under PHRA).

Further, even if plaintiff's first filing of the complaint with EEOC was inadequate, the clear language of the statute allows for equitable tolling. It is possible that plaintiff may be able to prove that her January 7th filing of the complaint with PHRC falls within the rules allowing for equitable tolling because of some alleged inadvertent oversight by EEOC. Thus, we cannot say that it is clear that plaintiff cannot prove any set of facts to support her claim, and as such, defendants' arguments are rejected. *See Altopiedi v. Memorex Telex Corp.*, 834 F.Supp. 800 (E.D.Pa.1993) (this Court held equitable tolling principles applied where plaintiff filed complaint with PHRC on 181st day due to oversight of agency); *see also Nestor v. Quaker State Coca–Cola Bottling Co.*, 579 F.Supp. 289 (W.D.Pa.1984) (plaintiff complied with administrative remedies even though PHRC dismissed plaintiff's complaint as untimely, therefore defendant's motion for summary judgment concerning court's lack of jurisdiction over claim arising under PHRA was rejected).

## H. Pregnancy Disability

■ Plaintiff has brought a cause of action under the PHRA and/or New Jersey Law Against Discrimination ("NJLAD") for pregnancy discrimination/disability due to defendants' failure to accommodate her while she was pregnant. Complaint, count VI. Plaintiff alleges that she was discriminated against because of her pregnancy disability, and that other males with disabilities were treated more favorably. *Id.* at paras. 80, 81. Defendants seek to dismiss count six on the basis that it fails to state a claim because pregnancy is not a disability under the PHRA. While we agree with defendants and

3. While defendants argue that plaintiff failed to file a *verified* complaint with EEOC, for purposes

of this motion we must assume that it was verified.

will dismiss count six, we will grant plaintiff leave to replead count six as the parties have not addressed the viability of such a cause of action under the New Jersey statute.

The PHRA prohibits discrimination by an employer on the basis of one's race, color, religion, age, sex, handicap or disability, national origin or ancestry. 43 P.S. § 955(a) (1991 and supp.1993). Under the PHRA, handicap or disability is defined as: "1) a physical or mental impairment which substantially limits one or more of such person's major life activities; 2) a record of having such an impairment; or 3) being regarded as having such an impairment." 43 P.S. § 954 (p. 1) (supp.1993). The applicable regulations further define handicap or disability as follows:

A) "Physical or mental impairment" means a physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more of the following body systems; neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin and endocrine or a mental or psychological disorder, such as mental illness, and specific learning disabilities.

B) "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

C) "Has a record of such impairment" means has a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities.

D) "Is regarded as having an impairment" means has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator or provider of a public accommodation as constituting a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward the impairment; or has none of the impairments defined in subparagraph (i)(A) but is treated by an employer or owner, operator or provider of

a public accommodation as having an impairment.

16 Pa.Code § 44.4 (1992).

Courts have construed this definition rather narrowly. For instance, in *McCloskey v. Nu–Car Carriers, Inc.*, 387 Pa.Super. 466, 564 A.2d 485 (1989), *allocatur denied*, 525 Pa. 585, 575 A.2d 115 (1990), the court stated that the complete loss of eyesight in one eye fell within this definition because it was an impairment that limited a major life function, namely, eyesight. *McCloskey*, 387 Pa.Super. 466, 564 A.2d 485, 488 (1989). However, the court reasoned that plaintiff had failed to prove that he was disabled where he testified that he had undergone corrective surgery which restored his vision to 20/40 when he wore contact lenses or eyeglasses. "To adopt a definition of 'handicapped' which would include persons whose vision is correctable by eyeglasses or contact lenses would 'result in an expansion of disability protection beyond the logical scope of the Act. . . . Under such an expansive reading any individual rejected for a single job based on a physical impairment would be considered disabled under the law. . . . This court refuses to make the term handicapped a meaningless phrase.'" *Id.* (quoting *Cooper v. Hennepin County*, 441 N.W.2d 106, 113 (Minn.1989)).

Likewise, in *Civil Serv. Comm'n v. Pennsylvania Human Relations Comm'n*, 527 Pa. 315, 591 A.2d 281 (1991), the Pennsylvania Supreme Court held that there was no indication that obesity fit within this definition. After examining the record, where plaintiff testified that his obesity did not affect his breathing, that he did not have high blood pressure, diabetes, thyroid condition, pulmonary problems or lung disease, and that he was capable of performing the job and other major life functions, the court concluded he did not fit within any of the above categories and therefore was not handicapped within the meaning of the Act.

A pregnant woman does not fall within the language of the statute by virtue of its plain meaning. In order for a pregnant woman to be considered disabled, she must have an impairment which substantially lim-

its one of her major life activities, or be regarded as having such an impairment. While a pregnant woman certainly has a physiological condition, it cannot be said that the condition affects any of the above body systems. The cases indicate that the body system must be affected in a negative manner, such that there are problems suffered as a result of the condition. While a person with a loss of eyesight obviously cannot see, there is no negative effect when a woman becomes pregnant. She is still able to reproduce, in fact she is reproducing when she is pregnant, thus it cannot be said that her reproductive system is negatively affected in the same manner as a loss of eyesight. To be truly disabled within the meaning of the PHRA, the person would have to suffer a condition which renders her incapable of reproducing. Moreover, the pregnancy does not substantially impair plaintiff's major life activities. Most women are not rendered incapable of walking, performing manual tasks, taking care of themselves, etc., because they are pregnant.

▮ Not only does plaintiff not fit within the above definition, but the complaint itself indicates she is not handicapped. As in *Civil Service*, plaintiff cannot prove a prima facie case because the complaint indicates that none of her major life activities have been substantially impaired. Rather, plaintiff alleges that "she was advised by her physician that due to the strains and requirements of her position as a traveling sales account executive, that she was to work 40–hour weeks without overtime up until the time she was scheduled to take her maternity leave" and that she was "denied reasonable accommodations despite the existence of sound medical reason for her request." Complaint, paras. 46, 57. Obviously, anyone who can work 40 hours a week as a limitation of their abilities is not suffering a substantial impairment of a major life activity, namely, the ability to work. The inability to work overtime hardly makes plaintiff handicapped.

Other reasons dictate our decision as well. First, there is a line of cases in Pennsylvania that has held that women terminated because they became pregnant have suffered sexual discrimination and not handicap discrimina-

tion. *Gallo v. John Powell Chevrolet, Inc.*, 765 F.Supp. 198, 209 (M.D.Pa.1991) ("Discrimination based on pregnancy constitutes sex discrimination, not handicap discrimination, under the PHRA."); *Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 299 A.2d 277 (1973). As stated by the Pennsylvania Supreme Court in *Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 212, 299 A.2d 277, 280 (1973):

> Mrs. Cerra's contract was terminated absolutely, solely because of pregnancy. She was not allowed to resume her duties after the pregnancy ended, even though she was physically and mentally competent. There was no evidence that the quality of her services as a teacher was or would be affected as a result of the pregnancy. Male teachers, who might be temporarily disabled from a multitude of illnesses, have not and will not be so harshly treated. In short, Mrs. Cerra and other pregnant women are singled out and placed in a class to their disadvantage. They are discharged from their employment on the basis of a physical condition peculiar to their sex. This is sex discrimination pure and simple.

While the court decided this case prior to the language in the PHRA which prohibited discrimination on the basis of a handicap or disability, cases since the 1974 amendment have failed to find that termination or discrimination on the basis of pregnancy is handicap discrimination. For instance, where pregnant women are denied disability benefits arising out of their pregnancy, the courts have held this to be sexual discrimination and not handicap discrimination. *Trans World Airlines, Inc. v. City of Philadelphia, Comm. of Human Relations*, 44 Pa.Cmwlth. 341, 403 A.2d 1057 (1979); *Anderson v. Upper Bucks County Area Vocational Technical Sch.*, 30 Pa.Cmwlth. 103, 373 A.2d 126 (1977); *see also Dallastown Area Sch. Dist. v. Pennsylvania Human Relations Comm'n*, 74 Pa.Cmwlth. 560, 460 A.2d 878 (1983) (school district policy that discriminated against pregnant women was sexual discrimination); *Leechburg Area Sch. Dist. v. Pennsylvania Human Relations Comm'n*, 19 Pa. Cmwlth. 614, 339 A.2d 850 (1975) (maternity

leave policy that discriminated amounted to sex discrimination).

Although plaintiff argues that her case is distinguishable from the above cases, we find the rationale of the above courts to be dispositive. Plaintiff argues that she suffered handicap discrimination because she "was not given the same treatment on account of her pregnancy related disability as [defendants] afforded male employees with disabilities." Plaintiff's response, p. 13. However, as the cases suggest, if plaintiff was treated differently, it was on account of her being pregnant, something that is uniquely experienced by women. Clearly, this is sex discrimination and not handicap discrimination.

Further, while the cases refer to "pregnancy related disabilities," the courts cautioned that pregnancy is not coextensive with disability. See *Trans World Airlines*, 44 Pa. Cmwlth. 341, 346–47, 403 A.2d 1057, 1060 (1979) ("pregnancy is not coextensive with disability. Accordingly, the mandate of the law is not that pregnancy be treated as a disability, but that pregnancy-related disability be treated like any other disability.") Thus, the term does not imply that one is disabled because she is pregnant. If that were the case, then employers whose disability plans discriminated against pregnant women would be committing handicap discrimination and not sex discrimination. Finally, as defendants aptly point out, the comments to the regulations promulgated by the EEOC to implement the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, which contains the exact definition of disability as the one in the PHRA, state that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza. Similarly, except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. § 1630.2(j) App. (1993). The comments further note that pregnancy, which is "not the result of a physiological disorder" is not an impairment. 29 C.F.R. § 1630.2(h) (1993).

While the comments to the Pennsylvania Code do not similarly expound on the definition, nor is there any legislative history which further defines the PHRA, we are confident that based on the above cases, comments to EEOC regulations and interpretation of the PHRA itself that pregnancy is not a disability or handicap under the meaning of the PHRA. Plaintiff has already stated a claim for sex discrimination under the PHRA which adequately protects any rights she has stemming from these circumstances. Thus, there is no prejudice resulting to her from dismissing her claim for pregnancy disability discrimination in violation of the PHRA. As such, we will dismiss count six but will grant plaintiff leave to replead due to the existence of the remaining claim of pregnancy discrimination under the NJLAD.

## I. Wrongful Discharge

Defendants next challenge the sufficiency of plaintiff's claims for wrongful discharge. Plaintiff has asserted three different claims for wrongful discharge: 1) wrongful discharge in breach of the implied covenant to terminate for just cause; 2) wrongful discharge in breach of the implied covenant of good faith and fair dealing; and wrongful discharge in violation of public policy. Defendants contend that each of these claims are preempted by the exclusive remedies of the PHRA and further, that they fail state a claim under Pennsylvania law. We will address each of defendants' arguments in turn.

### 1. Preemption by PHRA

Defendants are correct that the PHRA preempts parties from bringing common law claims for wrongful discharge based on claims of discrimination because the remedies of PHRA are exclusive. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989); 43 P.S. § 962(b) (1991). The Third Circuit has recognized the exclusive procedures established by the PHRA, and therefore has declined to recognize new causes of action which are designed to further Pennsylvania's anti-discrimination policies. *Sola v. LaFayette College*, 804 F.2d 40, 44 (3rd Cir.1986). Nevertheless, the courts have also recognized that where a

claim for breach of contract is grounded on conduct other than the alleged discriminatory conduct, that claim is not barred by the PHRA. For instance, in *Sola*, the plaintiff alleged that defendant discriminated against her in breach of her employment contract. The court "assume[d] without deciding that Sola is correct in her assertion that the PHRA does not preempt actions based on express contracts." *Id.* at 44. However, the court held that the grant of summary judgment in favor of defendant was proper because there was no evidence that gender was a factor in defendant's decision to deny plaintiff tenure.

Even more compelling, in *Deramo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985), the court specifically held that plaintiff's claim for breach of contract was not preempted by the PHRA. Although the plaintiff had pleaded claims grounded in both violations of the anti-discrimination legislation and breach of contract, the court recognized that plaintiff's "allegations of age discrimination are independent of the allegations for his breach of contract claim. . . . [I]t is entirely possible for Mr. DeRamo to succeed on his breach of contract claim without proving discrimination." *Id.* at 102.

█ In the present case, plaintiff's first claim is that she was terminated in violation of an implied covenant that she would not be terminated without just cause. Complaint, para. 93. Plaintiff asserts that this implied covenant arises from an express employee grievance procedure established by defendants and certain employment covenants plaintiff had to execute prior to beginning employment with plaintiff. *Id.* at paras. 89, 91. Plaintiff further asserts that she was arbitrarily terminated for her alleged errors although defendants' employees admitted that the errors were not her fault. *Id.* at para. 94. While plaintiff alleges that defendants "concocted" these errors as a pretext to fire her elsewhere in her complaint, that does not mean her breach of implied covenant claim is based on her discrimination claims. Rather, it is clear that plaintiff's claim for breach is based on defendants' acts of firing plaintiff without following their own established procedures and policies, and as

such, is not barred by the PHRA as defendants contend.

█ Similarly, plaintiff asserts that defendants also violated the covenant of good faith and fair dealing when she was discharged. She bases her claim on the following conduct by defendants: 1) refusing to permit plaintiff to have access to her files; 2) charging her with the errors while she was on maternity leave in order to deprive her right of access and to conduct an investigation; 3) failing to conduct an independent investigation; 4) ignoring their employees' admissions that the errors were without justification; and 5) abusing the errors policy in order to terminate plaintiff. Complaint, para. 102. Like plaintiff's claim for breach of the implied covenant to terminate for just cause, plaintiff's claim is not predicated on her discrimination claims, and as such, states a separate, independent basis for relief. Therefore, this claim is also not barred by the PHRA.

█ Finally, count eleven of plaintiff's complaint states a claim for wrongful discharge in violation of public policy. Plaintiff submits she was terminated "for exercising her personal privilege to bear children and retain gainful employment in violation of prescribed Federal and State statutes and laws." *Id.* at para. 107. Although the complaint is vague, it is clear this claim is predicated on plaintiff's termination based on alleged discrimination because of her sex and/or pregnancy. If plaintiff's claim is true, discharging a pregnant woman abridges the public policy against sexual discrimination in the workplace. However, the PHRA provides an adequate remedy for violations of these types, and as such, plaintiff is barred from bringing such a claim under Pennsylvania law. *See Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221 (3rd Cir.1984) (no common law cause of action for wrongful discharge in violation of public policy can be stated where employee was allegedly fired after refusing to succumb to sexual advances because PHRA adequately provides a remedy); *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3rd Cir.1982); *Eklof v. Bramalea, Ltd.*, 733 F.Supp. 935 (E.D.Pa.1989).

### 2. *Failure to state a claim*

 Defendants assert that plaintiff's claim for wrongful discharge in violation of the implied covenant of just cause fails to state a claim because plaintiff cannot prove that the grievance procedures and policies created a contract so as to abrogate the employment-at-will presumption. While there is a strong presumption in favor of employment-at-will, a party challenging his or her termination may bring a claim against his or her employer where there is evidence that the parties expressly contracted to overcome the at-will presumption. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 659 (3rd Cir.1990). Thus, if there was an express contract between the parties, or an implied in-fact contract plus additional consideration passing from the employee to the employer, then the at-will presumption can be overcome. *Ruby v. Federal Express*, civ. A. No. 92–2790, 1992 WL 229877, at 2 (E.D.Pa. Sept. 8, 1992); *Ruzicki v. Catholic Cemeteries, Inc.*, 416 Pa.Super. 37, 610 A.2d 495, 495 (1992) (quoting *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 95, 545 A.2d 334, 336 (1988)) (citations omitted). "[W]here the employer and the employee have entered into a contract which expresses a definite term of employment and forbids discharge in the absence of 'just cause' or without first utilizing an internal dispute resolution mechanism," the at-will doctrine can be overcome. *Rutherfoord v. Presbyterian–University*, 417 Pa.Super. 316, 612 A.2d 500, 503 (1992). However, the intention to overcome the presumption must be clear and definite. *Id.* Finally, it is for the court to determine whether the evidence is sufficient to overcome the at-will presumption. *Schoch*, 912 F.2d at 660. Courts have found that where there is "factual uncertainty of whether an employer's custom, practice, or policy creates a contractual 'just cause' requirement," a motion to dismiss must be denied. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 659 (3rd Cir.1990) (citations omitted).

In the present case, plaintiff alleges that defendants' "express employee grievance procedure" as well as requiring plaintiff to "execute certain employment covenants as a condition of her employment" led plaintiff to believe that she would be terminated for just cause only, and not for arbitrary reasons. Complaint, paras. 89–93. Although the complaint is rather vague, and plaintiff has a substantial burden to overcome in order to prove that the grievance procedure and employment covenants abrogated the at-will presumption, we cannot say that plaintiff has pled no set of facts that would entitle her to relief if proven. Given that we do not know what the alleged employment covenants contained, it is possible that an implied in-fact covenant existed if the covenants constitute additional consideration given by plaintiff. We cannot say at this point that it is beyond doubt that the grievance procedures coupled with the employment covenants did not create an implied in-fact contract. As such, we find defendants' arguments to be without merit.

 Defendants next challenge the sufficiency of plaintiff's claim for breach of the implied covenant of good faith and fair dealing on the ground that no such cause of action exists when the employment relationship is at-will. While it is true that there is no cause of action for breach of the implied covenant of good faith and fair dealing when the employment relationship is at-will, *Engstrom v. John Nuveen & Co., Inc.*, 668 F.Supp. 953, 958 (E.D.Pa.1987); *Braun v. Kelsey–Hayes Co.*, 635 F.Supp. 75, 78 (E.D.Pa.1986), in this case we cannot say for certainty that the employment relationship was at-will. As such, defendants' arguments are without merit.

### J. *Punitive Damages*

 Finally, in three separate counts of the complaint, plaintiff has pled claims for punitive damages arising under Title VII, the PHRA and NJLAD, and under Pennsylvania and New Jersey common law. Defendants object on the ground that the claims are merely incidental to the substantive claims, and while punitive damages are recoverable, they cannot be set out in a separate count. It is true that under both New Jersey and Pennsylvania common law, there is no separate cause of action for punitive damages. *Waltman v. Fahnestock & Co., Inc.*, 792 F.Supp. 31, 33 (E.D.Pa.1992), *aff'd*, 989 F.2d

490 (3rd Cir.1993); *California Natural, Inc., v. Nestle Holdings, Inc.,* 631 F.Supp. 465, 474 (D.N.J.1986); *Nix v. Temple University,* 596 A.2d 1132, 1138, 408 Pa.Super. 369 (1991). As such, we will dismiss count nine of the complaint and grant plaintiff leave to replead her claim for punitive damages under the appropriate substantive claim for damages.

However, where parties are seeking punitive damages under the PHRA, " 'the proper procedure is to file a claim under PHRA for backpay or reinstatement and a separate claim for punitive damages under an intentional infliction of emotional distress theory.' " *Knight v. Albert Einstein Med. Center,* 748 F.Supp. 280, 283 (E.D.Pa.1990) (citations omitted). In this case, plaintiff's claim for punitive damages in count seven of the complaint appears adequate under the above rule. Further, defendants have not provided the Court with any reason why a separate claim for punitive damages cannot be pled under PHRA and NJLAD, or Title VII. Since no prejudice appears to result to defendants by allowing plaintiff to plead separate claims under the above statutes, we find defendants' objections to be without merit.

### Conclusion

In sum, in treating this motion as a motion to dismiss, we find the majority of defendants' claims to be premature, and therefore without merit. However, we agree with defendants that count III must be dismissed as it fails to state a claim under Title VII for sex plus/pregnancy discrimination because it contains no new facts and is merely based on plaintiff's anticipated evidence of her other two discrimination claims. We also find that pregnancy is not a disability under the PHRA and therefore dismiss count six.

We further dismiss count eleven because plaintiff's claim for wrongful discharge in violation of public policy is preempted by the PHRA. However, with respect to count six and eleven, we grant plaintiff leave to replead as plaintiff has also stated claims under New Jersey law, and defendants have not raised any issues with regard to the viability of these claims. Further, should plaintiff have any facts in order to state a claim for sex plus/pregnancy discrimination, leave to replead is granted.

Finally, although we dismiss count nine because there is not a separate cause of action for punitive damages under Pennsylvania or New Jersey common law, we also grant plaintiff leave to replead her claim for punitive damages under the appropriate substantive laws. An appropriate order follows.

### ORDER

AND NOW, this 28th day of April, 1994, upon consideration of defendants' motion to dismiss or, in the alternative, for summary judgment, and all responses thereto, it is hereby ORDERED that defendants' motion is GRANTED IN PART AND DENIED IN PART. It is further ORDERED:

1) Count III of plaintiff's complaint is DISMISSED WITHOUT PREJUDICE, and plaintiff is granted leave to replead in accordance with this Memorandum within thirty (30) days from the entry date of this Order;

2) Count VI of the complaint is DISMISSED, and plaintiff is granted leave to replead her cause of action under New Jersey law in accordance with this Memorandum within thirty (30) days from the entry date of this Order;

3) Count XI of the complaint is DISMISSED, and plaintiff is granted leave to replead her cause of action under New Jersey law in accordance with this Memorandum within thirty (30) days from the entry date of this Order;

4) Count IX of the complaint is DISMISSED, and plaintiff is granted leave to replead in accordance with this Memorandum within thirty (30) days from the entry date of this Order.