Leroy D. **SCHOCH**, Appellant,

v.

**FIRST FIDELITY BANCORPORATION and Industrial Valley Title Insurance Company, Appellees.**

No. 90–1044.

United States Court of Appeals, Third Circuit.

Argued June 19, 1990.

Decided Aug. 27, 1990.

---

Barry A. Brown (argued), Barnett & Brown, Philadelphia, Pa., for appellant.

John H. Leddy, (argued) and Eric Hoffman, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellees.

Before GREENBERG, ALITO and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this litigation, which shuttled from the district court to the state court and back again to the federal forum, a former corporate officer seeks recovery for wrongful discharge, as well as additional incentive compensation and pension benefits. The district judge entered summary judgment in favor of defendants on all claims. Concluding that plaintiff was an employee at-will and that he failed to establish the existence of material disputed facts, we will affirm.

Plaintiff LeRoy Schoch was for many years an employee of defendant Industrial Valley Title Insurance Company, a subsidiary by merger of First Fidelity Bancorporation. He became president and chief operating officer of the title company in 1979, and served in that capacity until late 1983. At that time, the company replaced Schoch with a new executive and told plaintiff to report to his successor. Friction developed between the two men, and in June 1984 Schoch was asked to resign. When he refused, the company decided to terminate his employment effective December 31, 1984. Schoch performed no further duties after July 1, but continued to receive his salary until the end of that year.

Thereafter, plaintiff lodged with the Equal Employment Opportunity Commission an age discrimination claim that proved to be unsuccessful. In 1986 he filed a complaint in the district court alleging discrimination on the basis of age, improper reduction of bonus payments, and wrongful discharge.

On February 23, 1988, the district court granted summary judgment in favor of defendants on the age discrimination count, and dismissed the remaining two counts "without prejudice to plaintiff transferring those claims to an appropriate Court of the Commonwealth of Pennsylvania pursuant to 42 Pa.Cons.Stat.Ann. § 5103(b) (Purdon

Supp.1987)." That statute provides that a party may transfer litigation by filing in the state court a certified transcript of the district court's final judgment and related pleadings.

Plaintiff, however, failed to submit the certified federal judgment, and instead presented to the Prothonotary of the Court of Common Pleas of Philadelphia County a document labeled "Amended Complaint," verified in accordance with Pennsylvania procedure. The Prothonotary balked and did not accept the pleading until after counsel deleted the word "Amended."

This complaint dated August 5, 1988 contained five counts, the first two restating the bonus and wrongful discharge claims, respectively, of the 1986 federal suit. Count III asserted a claim for payment from a deferred compensation fund; Count IV sought an increase in pension benefits based on salary allocations made to the deferred compensation fund; Count V asked for increased pension benefits resulting from an anticipated recovery of bonus payments under Count I.

Through the removal process defendants brought the case back once again to the district court. They invoked federal question jurisdiction on the ground that the claims seeking pension benefits fell within the ambit of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

In due course, the district court granted summary judgment to defendants on all counts: on the bonus claim because plaintiff had failed to produce sufficient evidence that he was entitled to payments; on the wrongful discharge count because it was not supported by state law; on the deferred compensation claim because the parol evidence rule excluded the evidence necessary for recovery; and on the counts relating to pension benefits because the statute of limitations barred those claims.

## I.

On appeals from the grant of summary judgment, our standard of review is plenary, *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 142 (3d Cir.1987), and we review the record in the same light as a district court, *see Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Our task is to determine whether the record, viewed in the light most favorable to the non-moving party, reveals a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255, 106 S.Ct. 2505, 2510, 2513, 91 L.Ed.2d 202 (1986). With respect to summary judgment on a matter of contract interpretation, this Court has stated that "to affirm ... we must determine that the contract is so clear that it can be read only one way." *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987). If the opposing party asserts a reasonable reading differing from that of the district court, then the meaning of the contract must be resolved at trial.

Because the relevant facts and law differ as to the various counts, we will discuss them individually.

## II.

### COUNT I—THE BONUS PAYMENTS

In addition to his annual base salary, plaintiff was entitled to receive incentive compensation based on the title company's performance. The parties have referred to this increment as a "bonus," as shall we. The bonus payments were not discretionary with the employer, but stemmed from a contractual undertaking. To that extent the parties are on common ground. The disagreement arises over the method of calculation.

Plaintiff had received bonus payments in the years preceding 1983, but in that year the parties agreed to change the formula. In a July 13, 1983 memorandum to the company's treasurer, the chairman of the board elaborated on the specific terms:

> "This will confirm the change in Roy Schoch's incentive compensation program which I communicated verbally to him earlier in the year. "Under the change in plan, he is entitled to 5% of the net operating income of IVT [Industrial Val-

ley Title] up to $100,000 and 10% of the excess. Net operating income is determined in the same manner as it is for all others entitled to incentive compensation; namely, under generally accepted accounting principles with an adjustment to include the marginal earnings on an amount equal to the average claims reserve for the year."

■ It is uncontested on this record that the bonuses for plaintiff and other eligible executives were calculated on the same basis, with adjustments in the agreed percentages reflecting differences in rank and seniority. Plaintiff, therefore, was not discriminatorily or arbitrarily subjected to a formula that varied among similarly situated employees.

Plaintiff contends that the company erred in its application of the formula outlined in the memorandum in computing his bonus for 1983 and 1984. In calculating its net operating income, Schoch complains, the company: (1) did not take into account both the earnings of the title company plus a percentage of premiums received by the company's sister corporation, Continental Title Insurance Company; (2) failed to include interest earned on a reserve for losses; (3) arbitrarily reduced the earned premiums by 15%, in setting aside funds to cover claims; and (4) improperly subtracted the bonuses of other executives.

The court found no merit to the first and third points, commenting that the memorandum mentioned neither profits of the sister corporation nor inclusion of claim reserves. Plaintiff had not produced any document, affidavit, or deposition testimony "that suggests a contractual right to this asserted method of calculation." As to (2), the district judge determined that the defendant's worksheet for 1983 earnings presented "unrebutted evidence" that the bonus calculation had indeed included interest on the loss reserves. The court also rejected the contention that the company acted improperly in subtracting bonus amounts due other executives from net earnings before computing the amount due plaintiff. The uncontradicted evidence submitted showed that defendant used this same procedure for all other executives.

On appeal, plaintiff also argues that the method of determining company earnings for 1983 and 1984 differs from that used in 1982. This argument carries no weight because the memorandum of July 13, 1983 explicitly states that it changes the bonus payment plan.

■ We have reviewed the memorandum plaintiff filed in the district court opposing the defendant's motion for summary judgment, and see there only contentions not supported by verified or documented materials. As the non-moving party bearing the burden of proof, plaintiff had the obligation to establish the existence of a genuine issue of a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). That burden plaintiff failed to meet because his unsupported allegations in his memorandum and pleadings are insufficient to repel summary judgment. *See* Fed.R.Civ.P. 56(e) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial").

The Supreme Court has made clear that the object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n*, —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, Rule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact "to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at ——, 110 S.Ct. at 3189. It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings.

A review of the complete record here leads us to conclude that plaintiff failed to establish the existence of a disputed material fact, and therefore, the district court did not err in granting summary judgment on the bonus claim under Count I.

## III.

### COUNT II—WRONGFUL DISCHARGE

■ The complaint alleges that "it was the custom and practice of defendants to discharge employees only for cause or overriding business considerations," and that plaintiff relied on that conduct in continuing in his employment. In their answer, defendants acknowledged that such a termination policy existed.

In urging reversal of summary judgment on Count II, plaintiff emphasizes the employer's admission, along with the two alleged instances where, in response to requests for a written contract, company officials assured him that his employment would be terminated only for just cause. Defendants respond that plaintiff served "at will," and under the governing law of Pennsylvania, an employer's policy to discharge only for subjective just cause does not necessarily establish a contractual obligation to terminate only for objective good cause.

The district court concluded that the "just cause" practice adopted by the employer was insufficient to establish an employment contract. As the court explained, "No explanation of what constituted 'just cause' was ever given to plaintiff.... [N]o concrete terms were ever provided which could form the basis of the contract which plaintiff asks this court to imply." Moreover, the court stated that it could not "create a definition of just cause where it has no indication as to what the parties intended." Finally, the district court noted that although the at-will doctrine may allow an exception where the discharge offends public policy, plaintiff had not alleged any such violation.

Our review of the wrongful discharge claim here, a diversity matter, requires an examination of Pennsylvania's at-will employment doctrine that has been in effect for more than a century. *See Henry v. Pittsburgh & L.E.R.R.*, 139 Pa. 289, 297, 21 A. 157, 157 (1891) (employer "may discharge an employe with or without cause at pleasure, unless restrained by some contract"). With exceptions not yet clearly delineated, the general rule is that "absent a contract, employees may be discharged at any time, for any reason, or for no reason at all." *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 207, 511 A.2d 830, 834 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1987); *Darlington v. General Elec.*, 350 Pa.Super. 183, 188, 504 A.2d 306, 309 (1986).

The Pennsylvania Supreme Court in *Geary v. United States Steel Co.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974), reaffirmed the *Henry* rule, stating, "Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." The Court, however, disclaimed any intention to "define in comprehensive fashion the perimeters of this privilege." *Id.* at 184, 319 A.2d at 180. Where a plausible and legitimate reason for terminating an at-will employment relationship appears "and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* at 184–85, 319 A.2d at 180.

Save for dicta in *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1989), noting the general rule that "there is no common law cause of action against an employer for termination of an at-will employment relationship" with the exception of the public policy circumstance, the Court has not discussed the issue since *Geary*, despite several petitions for allocatur from judgments of the Pennsylvania Superior Court.[1] Pending at this time, however, is *Reilly v. Stroehmann*

---

1. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, *allocatur denied*, 517 Pa. 607, 536 A.2d 1331 (1987); *Ross v. Montour R.R. Co.*, 357 Pa.Super. 376, 516 A.2d 29 (1986), *allocatur denied*, 515 Pa. 609, 529 A.2d 1082 (1987); *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1987); *Muscarella v. Milton Shoe Mfg. Co.*, 352 Pa.Super. 158, 507 A.2d 430 (1986), *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1987); *Banas v. Matthews Int'l Corp.*, 348 Pa.Super. 464, 502 A.2d 637 (1986) (en banc), *allocatur denied*, Allocatur Docket No. 26 W.D. (Pa. Aug. 20, 1986).

*Bros. Co.*, 367 Pa.Super. 411, 532 A.2d 1212 (1987), *allocatur granted*, 520 Pa. 577, 549 A.2d 137 (1988) (contractual effect of employee manual).

Our Court has addressed the Pennsylvania at-will doctrine on several occasions, approaching the matter from various viewpoints. In *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir.1983), we read *Geary* as an indication that Pennsylvania law would permit a wrongful discharge claim "where the employment termination abridges a significant and recognized public policy." We also ruled that the factual uncertainty of whether an employer's custom, practice, or policy creates a contractual "just cause" requirement survives a motion to dismiss. *Id.* at 902–03.

In *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 225 (3d Cir.1984), the Court explained that *Novosel* did not purport to create an entirely new cause of action, nor did it "fashion a uniform just cause requirement for all discharges." *Wolk* also called attention to *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 919 (3d Cir.1982), which held that an available statutory remedy precluded a common law action for wrongful discharge arising from an at-will setting. *See Clay*, 522 Pa. at 90, 559 A.2d at 921. *See also Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 436 (3d Cir.1986).

To say that the law on the at-will employment doctrine in Pennsylvania has been in a state of flux is somewhat of an understatement. The uncertainty surrounding the issue, generated to a substantial extent by the lack of post-*Geary* rulings by the state's highest court, highlights the difficulty that a federal court sitting in diversity faces in formulating a ruling to which the parties are entitled under state law. It demonstrates once again a fundamental defect in diversity jurisdiction. *See Report of the Federal Courts Study Committee* 39–40 (1990).

For guidance on state law, we must of necessity look to the Pennsylvania Superior Court, which has applied the at-will doctrine in a variety of circumstances. Explaining the underlying theory, the Superi-

or Court sitting en banc observed: "The so-called 'at-will rule' reflects the belief that the intimacy of the master-servant relationship and the need for managerial discretion defy judicial scrutiny." *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 510, 536 A.2d 1375, 1382 (1988) (en banc) (citations omitted), *rev'd on other grounds*, 522 Pa. 86, 559 A.2d 917 (1989). Although modern employment relationships have raised doubts, "The rule has become so thoroughly woven into the fabric of our law and our commerce that only a legislative mandate will completely abolish it." *Id.*, 536 A.2d at 1382–83. The *Clay* Court noted that although the employee may establish that he contracted for employment that is not terminable at will, "This court ... has repeatedly refused to recognize contractual modification of the at-will rule absent a clear expression of the parties' intent." *Id.* at 511, 536 A.2d at 1383.

The Superior Court addressed the practical and procedural aspects of the doctrine in *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, *allocatur denied*, 517 Pa. 607, 536 A.2d 1331 (1987). "The at-will presumption," *Greene* explained, "is simply a legal recognition of the parties' normal expectations," because in the vast majority of employment settings, both the employer and employee feel free to make a change when it is desirable. *Id.* at 547, 526 A.2d at 1198. Rather than require parties to prove this in every case, the Court reasoned, "it is procedurally expedient that the law recognizes it as a presumption." *Id.*

The parties, of course, have the opportunity to defeat the presumption by demonstrating contractual intent. Recognizing too, that the average jury would tend to favor a discharged employee in a dispute over an asserted oral contact of employment, the Court characterized the at-will presumption as a guard against capricious jury verdicts. In sum, the at-will doctrine's imposition of a presumption, a rebuttable one, "balances the need to protect against prejudicial verdicts with the legal system's obligation to enforce the individual par-

ties['] expectations." *Id.* at 548, 526 A.2d at 1198.

■ That the at-will presumption cannot be easily overcome is emphasized in several opinions. "The burden of proof here is very great," *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 424, 539 A.2d 865, 867 (1988), and only "clear evidence that the parties intended to contract for a definite period" will set aside the presumption, *Greene*, 363 Pa.Super. at 551, 526 A.2d at 1200. "[G]reat clarity is necessary to contract away the at-will presumption." *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 99, 545 A.2d 334, 338 (1988). *Veno v. Meredith*, 357 Pa.Super. 85, 99, 515 A.2d 571, 578 (1986), elaborated on that theme: "[T]he modification of an 'at-will' relationship to one that can never be severed without 'just cause' is such a substantial modification that a very clear statement of an intention to so modify is required."

The Superior Court has held too vague to supplant the at-will presumption the fact that the employee was hired to work on "*long-term* government projects," *Darlington*, 350 Pa.Super. at 195, 504 A.2d at 312 (emphasis in original), or assured "permanent" or "lifetime" employment, *Greene*, 363 Pa.Super. at 543, 526 A.2d at 1196; *Scott*, 376 Pa.Super. at 96, 545 A.2d at 336. Likewise, insufficient are an employer's statement to an employee that "we're both going to retire together.... I want you to raise your children here," *Veno*, 357 Pa.Super. at 100, 515 A.2d at 579, and the representation that "[the employee] would be promoted to superintendent and perhaps more," *Ross v. Montour R.R. Co.*, 357 Pa.Super. 376, 382, 516 A.2d 29, 32 (1986), *allocatur denied*, 515 Pa. 609, 529 A.2d 1082 (1987).

In a similar vein, *DiBonaventura*, 372 Pa.Super. at 430, 539 A.2d at 870, concluded that "[a supervisor's] acquiescence to counsel's statement that '[the employer] won't just terminate someone without good reason for doing so' cannot provide the specificity and clarity necessary to show a custom or policy, or needed to modify the at-will employment situation."

Whether the evidence is sufficient to overcome the at-will presumption is a question of interpretation normally left to the court. *Ross*, 357 Pa.Super. at 381, 516 A.2d at 31–32; *Martin*, 354 Pa.Super. at 214, 511 A.2d at 838; *Darlington*, 350 Pa. Super. at 195, 504 A.2d at 312 (quoting 3 A. Corbin, *Corbin on Contracts* § 554, at 219–22 (1960)). Under exceptional circumstances, however, the court may permit the jury to make the determination. *See Greene*, 363 Pa.Super. at 555–56, 526 A.2d at 1202 (whether contractual obligations arise where employee was, *inter alia*, promised lifetime employment in exchange for working twenty-four years at salary below union scale). *See also Marsh v. Boyle*, 366 Pa.Super. 1, 7–8, 530 A.2d 491, 494–95 (1987).

Provisions of an employment handbook have also been used in attempts to establish an employer's contractual obligations. In *DiBonaventura*, 372 Pa.Super. at 423–24, 539 A.2d at 867, the Court stated that a "handbook that explicitly indicates that discharge will be for just cause only may create an implied contract of employment," removing the employee from at-will status. Speculation along this line may be found in *Banas v. Matthews Int'l Corp.*, 348 Pa.Super. 464, 483, 502 A.2d 637, 647 (1986) (en banc) (dictum), *allocatur denied*, Allocatur Docket No. 26 W.D. (Pa. Aug. 20, 1986). *Cf. Reilly*, 367 Pa.Super. 411, 532 A.2d 1212.

*Banas* specifically left the resolution of that question to another day; but in *Martin*, 354 Pa.Super. 199, 219, 511 A.2d 830, 840, where the handbook contained a "just cause" provision, the Superior Court commented: "[T]he employer did not intend to turn over to a trier of fact in a judicial setting the responsibility of defining 'just cause.'" Rather, the term meant "that the *employer*, in his subjective judgment, would decide what causes for discharge are 'just.'" *Id.* (emphasis in original). The use of the term "just cause" was not a "talisman which magically converts the at-will employee into one who can never be discharged without objective cause." *Id.* at 219–20, 511 A.2d at 840. Significant in

*Martin* was the Court's view that no reasonable person in the employee's position would have read the handbook provisions as imposing binding obligations on the employer.

This review of the leading Pennsylvania decisions shows that an employee seeking to establish an oral contract of employment faces an uphill battle. Here, plaintiff attempts to rebut the at-will presumption with the defendants' admitted custom of discharging employees only for "cause or overriding business considerations" and Schoch's affidavit attesting to assurances from two of his superiors that his employment would not be terminated without just cause.

■ We are not persuaded that these proofs sufficiently demonstrate the parties' intent to convert the at-will status into one of contract with a negotiated termination provision. We must reject the plaintiff's contention that the employer's admission of its discharge practice creates an implied contract that would allow termination only for cause. As the Pennsylvania Superior Court has made clear, "[F]ailure to adhere to a company personnel policy does not create a cause of action for breach of an employment contract." *Muscarella v. Milton Shoe Mfg. Co.*, 352 Pa.Super. 158, 162, 507 A.2d 430, 432 (1986), *allocatur denied,* 514 Pa. 636, 522 A.2d 1105 (1987); *Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 108, 466 A.2d 1084, 1085 (1983).

The present record does not indicate that the parties defined either "cause," "just cause," or "overriding business considerations," and thus we are left with subjective, amorphous terms. The district court concluded, and we agree, that no concrete terms were established to form the basis of the contract that plaintiff asserts. Our view of "just cause" here must be guided by state law as articulated in *Martin,* 354 Pa.Super. at 219, 511 A.2d at 840, that the term allows the employer, in his subjective judgment, to decide what causes for discharge are just.

Moreover, we note that in December 1981, plaintiff signed a "deferred compensation agreement" with the defendant title company. In this document it is stated, "WHEREAS, Employee [Schoch] is employed *at will* by the Company to serve in such capacities and such salary or as the Board of Directors may from time to time determine...." (emphasis added). Although plaintiff relies on this document as a basis for his claim on Count III only, we think this excerpt is difficult to reconcile with his contention in Count II that this was not an at-will employment.

The employer here also reserved the right to discharge for "overriding business considerations." What might fit this description to warrant employment termination from the company's standpoint would not necessarily be "just cause" as the employee sees it. For example, that events in today's business world might require revision of corporate leadership roles is neither surprising nor unexpected. Nor would it be unusual that an executive's failure to adjust to such changes could lead to his discharge. Although the loser in the struggle for corporate power might understandably feel that there was no "just cause," the company could be convinced that efficiency and morale required that the source of authority not be in doubt. In any event, the addition of business considerations as a factor that the employer could take into account in employee discharge substantially weakens, if indeed it does not eliminate, the plaintiff's just cause argument.

We have examined the record pertinent to the plaintiff's contention that he established an oral contract containing a term allowing discharge only for just cause. The evidence lacks the clarity and specificity that Pennsylvania courts require to overcome the presumption of at-will employment. We conclude that the district court did not err in entering summary judgment for defendants on Count II.

## IV.

### COUNT III—THE DEFERRED COMPENSATION AGREEMENT

After separation from the company, plaintiff asked that he be paid at once the

amount that had been credited to his account established under the 1981 deferred compensation agreement. Plaintiff based his request on alleged oral assurances by defendants giving him the unfettered right to withdraw sums from the plan. Those representations, he concedes, were made before the agreement was reduced to writing and executed. The company refused the plaintiff's request, but has continued to maintain his deferred compensation account and periodically sends him statements of interest earned.

■■■ The parol evidence rule is a matter of substantive law. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 405 (3d Cir. 1981). We agree with the district court that under Pennsylvania law the prior oral statements contradict the express terms of the writing and are inadmissible parol evidence. *See McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 348–49, 534 A.2d 115, 117 (1987), *aff'd*, 519 Pa. 439, 548 A.2d 1223 (1988) (per curiam); J. Murray, *Murray on Contracts* § 83B (3d ed. 1990).

There being no admissible evidence to support the plaintiff's claim, the district court did not err in enforcing the written agreement and granting summary judgment to defendants on Count III.

## V.

## COUNTS IV AND V—PENSION BENEFITS

According to plaintiff, Count IV sought in damages the difference between the pension benefits actually paid him and the amount of benefits he would have received had the monies placed under the deferred compensation agreement been included in his pension base, a claim separately set out in Count III. Similarly, Count V asked for the incremental pension benefits due had plaintiff received the bonus payments under Count I. Appellant's Brief at 31–32.

The court held that the pension benefits counts were time barred. The district judge reasoned that the statute of limitations on these claims had not been tolled because plaintiff failed to properly transfer the 1986 federal suit to the state court in accordance with the state statute. Thus, in the court's view, the 1988 action in the Common Pleas Court was not a continuation of the litigation begun in federal court in 1986, but rather, the commencement of a new suit.[2]

Adoption of that theory could present questions of Pennsylvania law that have not been considered by the state courts: whether the Prothonotary of Philadelphia County had the authority to decline acceptance of the pleading that plaintiff tendered; whether a transfer under 42 Pa. Cons.Stat. Ann. § 5103(b) (Purdon Supp.1990), could be completed nunc pro tunc;[3] and whether technical compliance with the transfer statute is required in order to toll the statute of limitations.

We need not address these novel issues at this juncture, in view of our disposition of Counts I and III. Schoch concedes that the damages from the pension benefit claims are derivative: Count IV flows from Count III, Count V from Count I. It follows ineluctably that if plaintiff does not succeed on his bonus and deferred compensation agreement claims, he cannot prevail on a contention that additional benefits, calculated on the bonus payments and amounts from the deferred compensation account, are also due.

We choose to affirm the district court's judgments on Counts IV and V on the theory that pension benefits were items of damages that could not exist independent of the deferred compensation claim asserted in Count III and the bonus claim in Count I. When Counts III and I failed, so did Counts IV and V, respectively.

The judgments of the district court will be affirmed.

■■■■

---

**2.** In the 1986 federal court suit, the plaintiff's pretrial statement listed increased benefits as an item of damages attributable to denied bonus payments.

**3.** In May 1989, while the current suit was pending in the district court, plaintiff belatedly filed in the state court a certified transcript of the earlier federal action.