

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2004

# Evans v. PA Power Light Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2534

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Evans v. PA Power Light Co" (2004). *2004 Decisions.* Paper 699.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/699

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-2534

———————

JOHN J. EVANS; MICHAEL BATH;
MARK LINDSEY; JOHN SORENSEN,
                                                   Appellants

v.

PENNSYLVANIA POWER & LIGHT COMPANY

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 00-cv-01753
(Honorable Thomas I. Vanaskie)

———————

Argued April 19, 2004

Before:  SCIRICA, *Chief Judge*, GARTH and BRIGHT*, *Circuit Judges*

(Filed May 17, 2004)

PETER G. LOFTUS, ESQUIRE (ARGUED)
The Loftus Law Firm, P.C.
P.O. Box V, 1207 North Abington Road
Waverly, Pennsylvania 18471
        Attorney for Appellants

————————

    *The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Judicial Circuit, sitting by designation.

DANIEL R. HALEM, ESQUIRE (ARGUED)
Proskauer Rose LLP
1585 Broadway
New York, New York 10036
          Attorney for Appellee

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

In this employment discrimination action, appellants appeal a grant of summary judgment in favor of appellee. For the reasons stated, we will affirm.

## I.

Appellants John Evans, Mark Lindsey, Michael Bath and John Sorensen were employed by appellee Pennsylvania Power & Light Co. (PP&L) until their termination in July of 1996. At the time of the incident described, appellants worked as Nuclear Plant Operators (NPOs) at the Susquehanna Steam Electric Station, a two unit boiling water nuclear reactor located in Berwick, Pennsylvania. As part of their duties, NPOs were required to perform two "rounds" during each twelve hour shift, in which they would record measurements, perform tests, and inspect equipment throughout the plant. While performing the rounds, NPOs recorded their actions and the test results on a "rounds sheet."

Among the tasks specified on the rounds sheet was testing an alarm panel in the basement of the E-Diesel generator building. In the event the power plant lost its source

of outside power, five diesel generators, including the E-Diesel generator, would serve as alternate sources of electricity for the equipment that cools the nuclear core of the reactor and prevents meltdown. The alarm was designed to signal problems with the auxiliary systems necessary for the E-Diesel generator to operate, including heating, ventilation, air conditioning, and emergency service water valves. Upon performing the alarm test, the NPO would place a check mark on the rounds sheet to indicate that he had successfully completed the test and that the alarm was functioning properly. Performance of the test was also recorded by the computer system consisting of two computers, one for each of the plant's two reactor units.

In July of 1996, PP&L became aware that numerous NPOs failed to perform the alarm test during their rounds although they marked on their rounds sheet that they had performed the test. Engineer Michael Adelizzi reviewed the computer data covering the period of January 1996 to July 1996 to ascertain the times each NPO had performed or failed to perform the alarm test. He also conducted a test that confirmed the reliability of the computer data. Finally, PP&L conducted individual interviews with the NPOs, questioning them about their alleged failure to perform the alarm test.

After reviewing the interviews, computer records, and rounds sheets, PP&L decided to discipline nineteen NPOs whose "recorded" alarm testing was not reflected on the computer records. The method of punishment for this error varied according to the frequency and consistency of the errors. Eight of the NPOs had missed the test once or

3

twice, while performing it correctly otherwise. PP&L determined that their behavior was attributable to human error and that a written warning was the most appropriate form of discipline. Five NPOs had never performed the test or performed it consistently after an initial failure to perform it. Concluding that this conduct constituted a reckless disregard of their duties, these NPOs were subject to a one-day suspension. Finally, six NPOs had missed the alarm test in a sporadic, unexplainable pattern. PP&L concluded that these NPOs were aware of the requirement to perform the test, so their failure to perform the test demonstrated a willful disregard of their job duties and deliberate falsification of the rounds sheets. These six NPOs were terminated. Two of the terminated NPOs were under 40 years of age, while four of the NPOs, the appellants, were over 40 years of age.

Upon their dismissal, the appellants' union filed a grievance contending that PP&L did not have just cause to terminate the NPOs. The union contended that PP&L failed to properly train appellants and notify them of their duty to perform the alarm tests, and it also argued that the omissions were not done voluntarily, knowingly, or deliberately. In an opinion dated April 30, 1998, the arbitrator held that PP&L had just cause to terminate the appellants. The union did not challenge this conclusion.

On October 3, 2000, appellants brought suit in federal court alleging their terminations violated the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.,* and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951, *et seq.* In the suit, appellants reiterated their contention that the alarm test failures

4

resulted from computer error and PP&L's failure to train them and communicate to them how the test was to be performed. They further asserted that PP&L used the alarm test as a pretext to (1) terminate older employees and avoid laying off seven younger Auxiliary System Operators (ASOs)[1] slated for discharge, and (2) shift the focus away from an error in senior management regarding a circuit breaker misalignment in the E-Diesel generator. The District Court granted summary judgment in favor of PP&L in a memorandum opinion dated May 7, 2003. Appellants filed this timely appeal.

## II.

We exercise plenary review over the District Court's grant of summary judgment. *Simpson v. Kay Jewelers,* 142 F.3d 639, 643 (3d Cir. 1998). In determining whether summary judgment was properly granted, we must use the same standard applied by the district court and take the facts in the light most favorable to the nonmoving party. *Doe v. County of Centre,* 242 F.3d 437, 446 (3d Cir. 2001). We have jurisdiction under 28 U.S.C. § 1291.

## III.

### A.

Appellants claim that the District Court erred in granting summary judgment to PP&L for failure to establish a *prima facie* case and, alternatively, for failing to establish

---

[1]ASOs may be promoted to NPO positions after receiving classroom instruction and on-the-job training.

pretextual reasons behind the termination.

Under the ADEA, employers are prohibited from discriminating against individuals in hiring, termination, compensation, or conditions of employment on the basis of their age. 29 U.S.C. § 623(a)(1). To survive a motion for summary judgment in an ADEA case, a plaintiff must first establish a *prima facie* case of age discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). The elements of a *prima facie* case of age discrimination are: (1) the plaintiff is over 40 years of age; (2) the plaintiff is qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of job discrimination. *Keller,* 130 F.3d at 1108. This Court has recently taken a more flexible approach to the fourth prong. In *Pivirotto v. Innovative Systems, Inc.,* we stated that "a complainant can satisfy the fourth prong of her prima [facie] case simply by showing that, as here, the employer had a continued need for someone to perform the same work after the complainant left." 191 F.3d 344, 354 (3d Cir. 1999) (quotations omitted).

Once the plaintiff has established a *prima facie* case of age discrimination, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 522 (3d Cir. 1992). The plaintiff then has the burden to provide sufficient evidence from which a factfinder could reasonably either (1) reject the employer's nondiscriminatory

6

explanation for its decision, or (2) believe that an invidious discriminatory reason was more likely than not a motivating cause of the employee's discharge. *Fuentes v. Perskie,* 32 F.3d 759, 763-64 (3d Cir. 1994).

**B.**

PP&L stipulates that appellants have satisfied the first three prongs of the *prima facie* case, but it claims, and the District Court found, that appellants failed to establish the fourth prong. PP&L did not hire new employees to cover appellants' shifts, but it inserted other workers into these spots. Ken Hillman, a Senior Nuclear Plant Specialist for PP&L who was responsible for staffing appellants' positions, testified by affidavit that PP&L regularly maintains on its staff extra NPOs and Plant Control Operators to provide coverage for absences due to vacations, illness, or training. Because of this, Hillman testified, PP&L was able to rely on existing staff to cover appellants' shifts.

As in *Pivirotto,* we believe appellants have satisfied the fourth prong requirement, for PP&L "had a continued need for someone to perform the same work after the complainant[s] left." 191 F.3d at 354. Although it is not free from doubt, appellants have demonstrated a *prima facie* case of age discrimination.

**C.**

While appellants may have made the required *prima facie* showing for age discrimination, they cannot survive summary judgment due to their failure to sufficiently cast doubt on PP&L's stated reasons for termination.

7

PP&L has presented a legitimate, non-discriminatory basis for the termination of appellants' employment, namely that appellants failed to perform the alarm tests essential to the safety of the nuclear power plant and the public and that they falsely represented having completed the tests, showing a willful disregard of their duties as NPOs. PP&L produced evidence that each appellant admitted to not having always performed the alarm test. Furthermore, it investigated the reasons appellants subsequently gave for not having consistently performed the test. PP&L found those reasons were invalid, concluded that appellants intentionally entered false information on the records sheets, and terminated their employment.

This is not an ordinary matter involving an employee's failure to perform certain duties. The proper performance of appellants' duties were essential to the operation of a nuclear power plant. Any disregard of testing responsibilities could have a profound impact on public safety. PP&L categorized the offending employees according to their level of culpability.

Since PP&L presented valid, nondiscriminatory reasons for the terminations, appellants were obligated to present evidence from which a reasonable factfinder could conclude that PP&L's articulated reasons were false, or that discrimination was more likely than not a motivating cause of PP&L's actions. *Fuentes,* 32 F.3d at 764. Specifically, appellants must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred legitimate

reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (quotations omitted).

Appellants claim PP&L falsely manufactured the "test button problem" in order to distract attention from an alleged incident involving a "misalignment of the circuit on the E-Diesel," and to also provide a reason to terminate them and replace them with younger ASOs. Appellants claim their theory is strengthened because of problems with the plant's computer system and a lack of training in performing the alarm test. In addition, appellant Mark Lindsey asserts in his affidavit that an unnamed member of PP&L's Board of Directors told him in the spring of 1993 "that the overall concern for the Operations Department was age."

These representations are not sufficient for a reasonable factfinder to discount PP&L's motives or reasons for terminating appellants' employment. Appellants' claims are mere conjecture or are not supported by evidence. For instance, appellants allege PP&L brought back seven displaced ASO's to fill their positions, six of whom were under 40 years of age,[2] but they present no supporting documentary evidence such as personnel records, third-party evidence, or testimony of those who allegedly replaced

---

[2]Lindsey asserted that "[t]he employees who were brought back to ASO positions were Tim Ebert (late 20's); Dave Evans (32); Mark Haile (38); Mike Krebs (33); Ron Dalmas (35); Gordon Shellenberger (32) and Glenn Miller (45)." However, the personnel records of these individuals demonstrate that only Ebert was an ASO at the time of the alleged incident. Furthermore, Ebert was not promoted to the NPO classification until nearly three years after appellants' termination.

them.  This unsupported allegation does not meet the requirements of Fed. R. Civ. P. 56(e).  *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

Several of appellants' assertions are contradicted by the record.  Instead of revealing computer "problems," as appellants claim, Adelizzi's engineering report verified the accuracy of the two computers.[3]  Although appellants allege the circumstances of the termination imply selective discrimination on the basis of age, two of the six terminated NPOs were less than forty years of age.  Furthermore, PP&L grouped the offending employees into three categories, based entirely on levels of misfeasance and relative culpability having no connection to age.

Finally, Lindsey's allegation regarding the unnamed PP&L board member's age-related statement is not sufficient to overcome summary judgment.  Appellants have not shown a connection between the board member and the 1996 incident.  Furthermore, the alleged statement was made in 1993, well before the alarm test investigation.  *See Ezold,* 983 F.2d at 545 ("Stray remarks by non-decision makers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

In summary, appellants did not produce direct or circumstantial evidence from which a reasonable factfinder could conclude that PP&L's stated reasons for firing

---

[3]Adelizzi found that the computer failed to register an alarm only when the test and reset buttons are pushed almost simultaneously, a highly unlikely occurrence.

appellants were false or that age was a motivating factor in the termination decision.

Therefore the District Court properly granted summary judgment in favor of PP&L.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.

11