**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 11-1528

—————————

M.D. PHILIP EDWARDS,
                              Appellant

v.

GEISINGER CLINIC

—————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-08-cv-01653)
District Judge: Honorable A. Richard Caputo

—————————

Argued October 26, 2011

Before:   FISHER, VANASKIE and ROTH, *Circuit Judges*

(Filed: January 23, 2012)

—————————

OPINION OF THE COURT

—————————

Ronald H. Surkin (*ARGUED*)
Gallagher, Schoenfeld, Surkin, Chupein & Demis, P.C.
25 West Second Street
Media, PA 19063
*Counsel for Appellant*

Jonathan B. Sprague (*ARGUED*)
Darren M. Creasy
Alfred J. Johnston
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Boulevard, 15th Floor
Philadelphia, PA 19103
*Counsel for Appellee*

VANASKIE, *Circuit Judge.*

Philip Edwards appeals the District Court's decision granting summary judgment to the Geisinger Clinic ("Geisinger") on his breach of employment contract claim. Edwards contends that the District Court erred in finding that there was no genuine dispute of material fact concerning whether he had an express employment contract for a definite term with Geisinger. We reject Edwards's argument and will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case, so we set forth only those facts necessary to our analysis. Edwards is a licensed physician from the United Kingdom who specializes in interventional radiology. Before 2006, Edwards had a temporary visa to work in Kentucky. In early 2006, while Edwards was working in Kentucky, the chair of Geisinger's interventional radiology department, Dr. Dominick Conca, began recruiting Edwards to work at Geisinger's clinic in Danville, Pennsylvania. During Edwards's interviews with Geisinger, Edwards and Conca discussed that Edwards wanted to obtain board certification from the American Board of Radiology (the "ABR"), which Geisinger requires new physicians to receive. To obtain board certification from the ABR, a

2

physician must complete four years of uninterrupted employment at an approved residency program.

During Edwards's interviews, Conca asked Edwards if he understood that he "need[ed] to be here [at Geisinger] for at least four years and [that he] ha[d] to get [his] boards" within six years, or else "Geisinger would have to review [his] situation." (A. 227.) Edwards stated that he understood and indicated that he was seeking a position at Geisinger in part to obtain board certification. Subsequently, Edwards and Conca had several conversations both before and after Edwards accepted employment at Geisinger to develop a program that would enable Edwards to obtain board certification within four to six years.

On July 5, 2006, Conca delivered to Edwards a formal offer letter. The offer letter reiterates that "[b]oard certification . . . is a requirement for physicians in the Geisinger Clinic." (A. 260.) It further provides that Edwards "will be granted 4-6 years from the date of employment to become board certified," and that if he fails to obtain board certification within six years, "continued employment . . . will need to be reevaluated." (A. 260.) The offer letter notes that Edwards's offer is subject to executing a "Practice Agreement," but Edwards claims that Geisinger failed to enclose the Practice Agreement with the offer letter. (A. 259.) Edwards contends that he reviewed the offer letter and signed it on July 11, 2006 without receiving the Practice Agreement.

Nine days later, Edwards signed Geisinger's formal employment application. The application states:

I . . . [u]nderstand that my employment and/or contract cannot be terminated for[] [a]dvocating for medically necessary and appropriate health care[;] . . . [f]iling a grievance on behalf of an enrollee of a managed care plan; . . . [p]rotesting a decision, policy or practice that I believe interferes with my ability to provide medically necessary and appropriate health care[;] . . . [h]aving a practice which includes a substantial number of patients with expensive medical conditions; or [o]bjecting to the provision of or refusing to provide health care services on moral or religious grounds.

(A. 264.)

After Edwards signed his offer letter, Geisinger communicated with the ABR to ensure that Edwards would be able to sit for the boards after four to six years. In this regard, Geisinger sent Edwards's offer letter to the ABR.

Edwards's temporary visa expired, requiring that he return to the United Kingdom. Edwards and Geisinger communicated with United States immigration authorities to obtain an H-1B visa to allow Edwards to return to the United States and to work for Geisinger. Edwards alleges that both he and Geisinger needed to represent to United States immigration authorities that he "had at least a three year employment commitment" with Geisinger to obtain the visa. (A. 274.)

In 2007, Edwards received his visa and moved from the United Kingdom to Danville, Pennsylvania to begin working for Geisinger. One to two months after he began working for Geisinger, he signed the Practice Agreement referenced in his original offer letter.[1] The Practice Agreement provides that Edwards "acknowledge[s] that [his]

---

[1] Edwards stated in his deposition that he is uncertain whether he signed the Practice Agreement on July 11, 2006 or shortly after beginning to work for Geisinger, but he believes that he most likely signed it after beginning to work for Geisinger. On

4

employment with Geisinger is 'at will' and may be terminated at any time by either party for any or no reason." (A. 136.)

Edwards contends that he did not see the "at will" language in the Practice Agreement because Conca called him into his office and told him that a document needed to be signed. He further asserts that Conca stated that it was "nothing important, but it would help if we could just get it signed." (A. 232.) Edwards notes that he "was given a very short period of time" and "had a patient on the table," so he flipped through the Practice Agreement without reading it carefully, asked Conca which date he should write, and dated it as July 11, 2006 according to Conca's instructions. (A. 232-33.) He states that he "would have been circumspect about accepting the position" if he had seen the at-will provision before deciding whether to accept Geisinger's offer. (A. 234.)

In May 2008, Geisinger terminated Edwards's employment. Edwards sued Geisinger on September 4, 2008 for breach of contract, seeking declaratory relief, specific performance, and a preliminary injunction. Edwards withdrew his request for a preliminary injunction, and the District Court dismissed Edwards's request for specific performance. On September 13, 2010, Geisinger moved for summary judgment, arguing that Edwards's employment contract was at-will. The District Court agreed that

appeal, he contends that he signed the Practice Agreement shortly after beginning to work for Geisinger. Because the District Court disposed of Edwards's case on summary judgment, we resolve this possible factual issue in favor of Edwards and accept for purposes of this appeal that he signed the Practice Agreement after beginning to work for Geisinger. *See Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (we view the facts "in the light most favorable to the nonmoving party" on a motion for summary judgment).

Edwards's employment was at-will and granted summary judgment to Geisinger. Edwards then filed this appeal.

II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over district court decisions granting summary judgment. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). Summary judgment is appropriate when the movant demonstrates "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). As the parties agree, we apply Pennsylvania law because the parties' dispute concerns an employment contract in Pennsylvania.

Edwards contends that the District Court erred in holding that his employment was at-will because he contends that he and Geisinger entered into an express employment contract for a definite term. He argues that he raised a genuine dispute of material fact of whether he had an express contract for a definite term because (a) Geisinger emphasized the ABR's four-year residency requirement for board certification during recruitment discussions and in its offer letter, (b) Geisinger did not include an at-will disclaimer in its offer letter or in its employment application, (c) Geisinger's employment application lists restrictions to its right to terminate its employees, and (d) Geisinger represented to the ABR and to United States immigration authorities that it committed to hire Edwards for a definite term. We reject each of Edwards's arguments, holding that Edwards has failed to

6

raise a genuine dispute of material fact concerning whether he had an express employment contract for a definite term. [2]

A.

Pennsylvania law presumes that employment is at-will. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 505 (3d Cir. 2001). To overcome the presumption of employment at-will, an employee "must show clear and precise evidence" that the parties intended to enter an employment contract for a definite term. *Id.* In analyzing the parties' intent, we consider "the surrounding circumstances." *Marsh v. Boyle*, 530 A.2d 491, 493 (Pa. Super. Ct. 1987). An employee's "subjective expectation of . . . guaranteed employment . . . based on employer practices or vague employer superlatives" does not demonstrate an employment contract for a definite term. *Scully*, 238 F.3d at 505. Likewise, "comments which merely evince an employer's *hope* that the employee will remain" are

---

[2] In Edwards's opening brief, he also contends that he provided additional consideration to Geisinger, primarily by moving from the United Kingdom to Pennsylvania to accept Geisinger's offer. However, Edwards claims elsewhere in his brief that he relies only on an express contract theory and not on an implied contract theory, even though additional consideration may support a finding of an implied contract to retain the employee for a reasonable period of time. *See, e.g., Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 74 (Pa. Super. Ct. 1991) (holding that additional consideration is a factor in determining whether there is an implied contract of employment); *Scullion v. EMECO Indus., Inc.*, 580 A.2d 1356, 1359 (Pa. Super. Ct. 1990) (including additional consideration as a factor in determining whether an employee had an implied contract to be employed for a reasonable time period). At oral argument, Edwards again stated that he was relying only on an express contract theory, and clarified that he raised an additional consideration argument only to illustrate the circumstances surrounding his employment contract with Geisinger. Because Edwards argues only that he had an express contract, we do not address whether he may have provided sufficient additional consideration to Geisinger to create an implied contract for a reasonable period of time.

inadequate to prove a contract for a definite term. *Marsh*, 530 A.2d at 493 (quoting *Veno v. Meredith*, 515 A.2d 571, 579 (Pa. Super. Ct. 1986)).

As an initial matter, we believe that Geisinger and Edwards demonstrated their mutual intent for Edwards to be an employee at-will when they both willingly signed the Practice Agreement. *See, e.g.*, *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 661 (3d Cir. 1990) (an agreement stating that an employee is at-will "is difficult to reconcile" with the employee's later attempt to characterize his or her employment as terminable for cause only). Edwards counters that he did not notice the Practice Agreement's at-will term because he reviewed the Practice Agreement quickly. However, "[i]gnorance of the contents of a document or failure to read before signing is no defense to a contractual obligation under Pennsylvania law." *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 900 (3d Cir. 1981), *overruled on other grounds by Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982). Although we decline to decide whether the at-will term in the Practice Agreement is enforceable as a contractual obligation, we believe that *Schoch v. First Fidelity Bancorporation* and *Tose v. First Pennsylvania Bank, N.A.* nonetheless support recognizing the Practice Agreement's at-will language as evidence of the parties' mutual intent and understanding.

B.

Turning to Edwards's arguments, we agree with the District Court that Geisinger's statements concerning employment for four to six years during recruitment discussions and in Edwards's offer letter were too vague to establish an express contract for a definite term. *See Scully*, 238 F.3d at 505 ("vague" employer statements do not establish a

8

contract of employment for a definite term). We believe that Conca's statements during recruitment, such as Conca's question of whether Edwards understood that he "need[ed] . . . to be here [at Geisinger] for at least four years and . . . to get [his] boards," explained Geisinger's board certification requirement and expressed Geisinger's hope that Edwards would work for four to six years to obtain board certification. (A. 227.) We do not believe that Geisinger's statements demonstrated that it intended to guarantee at least four years of employment.

Likewise, although the offer letter includes a paragraph stating that Edwards "will be granted 4-6 years from the date of employment" to receive board certification, the same paragraph begins with a disclaimer that board certification is a requirement for working for Geisinger. (A. 260.) The offer letter then concludes by implying that Edwards will risk losing his employment if he fails to receive board certification within four to six years. Accordingly, the "will be granted" language in the offer letter appears to clarify Geisinger's board certification requirement rather than to promise employment for a definite term.

Further, we reject Edwards's argument that Geisinger implied that it was guaranteeing employment for a definite term by failing to include an at-will disclaimer in its offer letter or in its employment application. As explained in Section II(A) *supra*, Pennsylvania law presumes that employment is at-will. *See Scully*, 238 F.3d at 505. Accordingly, the absence of an at-will disclaimer does not indicate that the parties contracted for employment for a definite term.

9

Next, we reject Edwards's argument that Geisinger's employment application suggests employment for a definite term. Although the employment application provides a list of certain circumstances under which Geisinger may not terminate Edwards's employment, the application does not state that it alters the employment relationship for any other circumstances. Indeed, the application's list of enumerated circumstances suggests that Geisinger reserved the right to terminate Edwards for all other reasons.

We believe that the declarations in the job application are most like policy statements in employee handbooks, which form a contract under Pennsylvania law only when the parties' intent is clear and an employee reading the handbook "could reasonably believe that a contract [for a definite term] did exist." *DiBonaventura v. Consol. Rail Corp.*, 539 A.2d 865, 870 (Pa. Super. Ct. 1988). Pennsylvania courts typically find that an employee handbook rebuts the presumption of employment at-will only when the employer has included unambiguous language indicating its intent to create a relationship terminable only for just cause. *See Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997) ("The handbook must contain a clear indication that the employer intended to overcome the at-will presumption."). Indeed, the Pennsylvania Superior Court held in *Luteran v. Loral Fairchild Corp.* that even language stating that the employer would "discharge for just cause" did not establish an express or implied contract that could be terminated only for just cause. *Id.* at 215. Much as in *Luteran*, Geisinger's employment application includes no language stating that it creates more than an at-will relationship. Instead, the employment application appears more like an

10

aspirational statement of employer and employee expectations, which does not establish an express contract under Pennsylvania law.

Finally, Edwards contends that Geisinger expressed its intent to enter into a contract for a definite term by communicating to the ABR that Edwards was participating in its four-year board certification program and by sponsoring Edwards for a three-year H-1B visa. Edwards's argument concerning the ABR fails because he does not demonstrate that Geisinger ever represented to the ABR that it was guaranteeing four years of employment. Edwards relies primarily on just one facsimile by Geisinger's recruiter forwarding Edwards's offer letter to the ABR. Edwards contends that the ABR interpreted the offer letter "as a representation that both Edwards and Geisinger committed to the ABR four year program requirement," presumably because the ABR noted that Edwards would work for Geisinger from October 1, 2006 to September 30, 2010. (Appellant's Br. 10.) The ABR's interpretation of Geisinger's offer letter facsimile is not relevant to proving that Geisinger intended to guarantee four years of employment. Further, even if the ABR's interpretation was relevant, the ABR's notation stating that Edwards would work at Geisinger from October 1, 2006 to September 30, 2010 does not demonstrate that it understood Geisinger as guaranteeing four years of employment. At most, it demonstrates that the ABR anticipated that Edwards would work for Geisinger for four years.

Likewise, we reject Edwards's argument that he and Geisinger entered into an express employment contract for a definite term when Geisinger agreed to sponsor Edwards's H-1B visa. An H-1B visa is a temporary work visa that lasts up to three years

11

with the possibility of renewal. *See* 20 C.F.R. § 655.750(a)(1) (2008). As Edwards appears to acknowledge, an H-1B visa does not guarantee employment for the visa's maximum duration. Indeed, the Immigration and Nationality Act expressly contemplates that an employer may dismiss a worker with an H-1B visa before the end of the visa's maximum duration. *See* 8 U.S.C. § 1184(c)(5)(A) (stating that an employer must pay return expenses if it dismisses an employee "before the end of the period of authorized admission"). Accordingly, sponsorship of an H-1B visa alone does not imply that the employer-sponsor has guaranteed employment for the visa's duration. *See, e.g.*, *Woods v. Era Med LLC*, 677 F. Supp. 2d 806, 818 (E.D. Pa. 2010) (holding that an employer's sponsorship of an employee's O-1 visa does not establish an employment contract for a definite term).

Although Edwards argues that Geisinger and Edwards "represent[ed] to the immigration authorities in the United States that Edwards had at least a three year employment commitment," he fails to provide evidence of any actual communications. (Appellant's Br. 10.) Instead, he asserts that he believes that Geisinger "had to represent to the immigration authorities in the United States that Dr. Edwards had at least a three year employment commitment, as the visa is for a minimum three year period." (A. 274.) We do not believe that Edwards's conclusory allegation that Geisinger must have represented to United States immigration authorities that it would employ Edwards for three years raises a genuine dispute of material fact. Accordingly, because Edwards has failed to raise any genuine dispute of material fact supporting his claim that he had an

express employment contract for a definite term, we agree with the District Court's grant of summary judgment to Geisinger.

III.

For the foregoing reasons, we will affirm the District Court's order.